STATE v. BOWEN.

1. Officers, who by virtue of their office are conservators of the peace,. have at common law the right to arrest, upon view, without warrant, all persons who are guilty of a breach of the peace òr other violation of the criminal laws.
2. And police officers of incorporated towns being charged with duties. which make them conservators of the peace, they have the same right of arresting without warrant.
3. The offence of resisting a public officer in the discharge of his duty is within the jurisdiction of the Court of General Sessions.

Before HUDSON, J., Charleston, November, 1881.

The opinion of the court states all the matters that appear· in the brief.

Mr. *S. J. Lee*, for appellant.

Mr. *Solicitor Jervey*, contra.

April 7, 1882. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was a prosecution for resisting an officer in the discharge of his duty, and for assault and battery.

There were three counts in the indictment: *First*, " That Prince Bowen, with force and arms, etc., in and upon one Samuel G. Gordon an assault did make, the said Samuel G. Gordon then and there being a peace officer, to wit, *a policeman of the city of Charleston*, an incorporated city in the county and state aforesaid, and then and there being in the lawful discharge of his duty as such policeman, and the said Prince Bowen then and there well knowing the said Samuel G. Gordon to be a policeman as aforesaid, and him the said Samuel G. Gordon then and there did beat, bruise, wound, and ill-treat, and did then and there resist, obstruct, hinder, and oppose the said Samuel G. Gordon in the discharge of his duty as said policeman, etc." The *second* count charged " an assault with a deadly weapon, to wit, a wooden paling, with the intent

him the said Samuel G. Gordon then and there to kill and murder;" and the *third* charged " an assault and battery with a wooden paling," omitting the charge of "intent to kill."

The evidence showed that Gordon was a policeman, and was acting without process, but in the discharge of his duty in keeping the peace, when the assault and battery was committed upon him. The jury rendered the following verdict: "We find the defendant guilty of resisting an officer and assault and battery." The defendant moved in arrest of judgment on the grounds stated in the exceptions. The circuit judge refused the motion, and sentenced him to one year at hard labor in the state penitentiary, and he now appeals to this court upon the following exceptions:

1. Because his Honor erred in refusing to arrest the judgment on the ground that resisting an officer acting without process is not an indictable offence at common law, and has never been made criminal by any statute in South Carolina.

2. Because his Honor erred in refusing to arrest the judgment on the ground that the indictment is fatally defective in not alleging that the officer resisted was engaged in serving process.

3. Because his Honor erred in refusing to arrest the judgment on the ground that the indictment is fatally defective in that it does not charge the accused with committing an assault and battery of *an aggravated nature.*

4. Because his Honor erred in refusing to arrest the judgment on the ground that the verdict of the jury finds the defendant guilty only of an assault and battery, of which offence the Court of General Sessions has no jurisdiction."

The first and second exceptions make the point that a *policeman* in an incorporated city, which by authority of the legislature has the power to appoint police officers to preserve the peace and good order of the city, has not, without a process for that purpose first issued, the right to arrest a disorderly person in the act of disturbing the peace of said city, and in attempting to do so may be assaulted with impunity. All the offences which fall under the general head of " obstructing justice" are considered to be of a very grave and high character, for the

obvious reason that they strike at the very foundation of authority and government, and tend by the strong arm to defeat the administration of justice and to overthrow all peace and order. There is no doubt that it is a criminal offence to resist an officer in the discharge of his duty. "The resisting of judicial process is at all times an offence of a very high and presumptuous nature, but more particularly so when it is an obstruction of an arrest upon a criminal process." 4 Bl. Com. 129; State v. Sotherlen, Harp. 44; State v. Hailey; 2 Strob. 73; 1 Bish. on Crim. L., § 465.

It is said, however, that resisting an officer in the discharge of his duty means an officer authorized to arrest, and no one can be so authorized without he is armed with a warrant regularly issued. The law is very tender of the liberty of the citizen. The general rule certainly is that one shall not be arrested except by authority of a warrant issued by a proper officer upon information under oath. "It is fitting to examine upon oath any party requiring a warrant, to ascertain that there is a crime committed, without which no warrant should be granted." Gen. Stat. 196. But there are exceptions, growing for the most part out of the nature of the offence and the necessity for immediate action, which are as well established as the principle itself. Blackstone says there are *four* ways in which arrests may be made: by warrant, by an officer without warrant, by a private person without warrant, and by hue and cry. Our law provides that any trial justice "shall be authorized to command all persons who, in his view, may be engaged in violent and disorderly conduct to the disturbance of the peace, to desist therefrom, and to arrest any such person who shall refuse obedience to his command." Gen. Stat. 198. The same right is given to constables. Ib. 207. And the same right is given to the City Guard of Charleston. 12 Stat. 421.

But it is further urged that the case of a *policeman* in an incorporated city is not one of the officers who are authorized, either by the common law or the statute, to make such arrests without warrant. While the old writers do not, in express terms, speak of *police officers* as among those who have the

right as conservators of the peace to make arrests without warrant, they do refer to *a class of officers*, conservators of the peace, as having that right. It is said in 1 *East's Pleas of the Crown*, 314, "With regard to such ministers of justice who in right of their offices *are conservators of the peace*, and in that right alone interpose in the case of riots and affrays, it is necessary, in order to make the offence of killing them amount to murder, that the parties concerned should have some notice of the intent with which they interpose. If the officer be within his proper district and known, or but generally acknowledged to bear the office he assumes; or if in order to keep the person he produces his staff of office or any other known ensign of authority," etc. This is a declaration of the rights of *conservators of the peace*, and we take it that when new officers of that class are created they come within the reason of the principle, and should have the same protection as those formerly existing.

Municipal corporations as now established by law are of comparatively modern origin. They are agencies to assist in the conduct of local civil government, and what the state constitutionally empowers them to do may be considered as done by the state. If they are authorized to create officers, as *conservators of the peace*, they are state officers within the limits of the authority given. Mr. Dillon, in his excellent work on Municipal Corporations, observes that "the office of a *police officer* is not known to the common law; it is created by statute, and such an officer has and can exercise only such powers as he is authorized to do by the legislature, expressly or derivatively. When police officers are by statute invested with all the powers of constables, or conservators of the peace, this gives them authority to arrest upon view intoxicated persons while guilty of disorderly conduct, or other persons violating the laws, and to detain them until they can be brought before a magistrate." 1 *Dillon*, § 149. And in a note it is said, "Power to a city corporation to make ordinances for the security or good order or government of the place, and to appoint or elect officers to carry out ordinances, *authorizes the appointment of city guards* or *police officers* or peace officers, and such officers *may arrest without*

*a warrant* persons engaged in breaches of the peace, when such a course is not repugnant to the general law of the state." *Commonwealth* v. *Hastings*, 9 *Metc.* 259; *Bryan* v. *Bates*, 15 *Ill.* 87; *State* v. *Lafferty*, 5 *Harr.* (*Del.*) 491; *White* v. *Kent*, 11 *Ohio St.*, 550; 2 *Whart*, § 1295; *Thompson* v. *State*, 30 *Ga.* 430; *City Council* v. *Payne*, 2 *N. & McC.* 475.

In the last case cited, concerning an arrest in the city of Charleston *by a policeman without warrant*, our view is so well expressed that we simply adopt it. " From time immemorial constables and watchmen had authority without warrant to arrest those whom they saw engaged in an affray or breach of the peace, and to detain them until they should find proper sureties. This practice was not only sanctioned by the common law, but by the usage which I believe prevailed in all the large cities of the Union, without which a populous town must frequently be subjected to scenes of violence and disorder. I regarded the city guard, who were peace officers of the city, in the light of watchmen and constables, as possessing the same powers as those officers, and thought that an arrest by the guard was no greater infringement of the rights of the citizen than an arrest under similar circumstances by a constable or a watchman," etc.

We agree with the Circuit judge that the first count of the indictment described an offence cognizable in the Court of General Sessions, and it will therefore be unnecessary to consider the other grounds of appeal.

The judgment of this court is that the judgment of the Circuit Court be affirmed.