1. *EX PARTE* WARE FURNITURE CO., *IN RE* MARSHALL, WESTCOAT & CO. v. STEADMAN.

2. *EX PARTE* SAME, *IN RE* JOHNSTON, CREWS & CO. v. SAME.

3. *EX PARTE* SAME, *IN RE* C. WULBURN & CO. v. SAME.

4. *EX PARTE* SAME, *IN RE* SAMUEL R. MARSHALL & CO. v. SAME.

5. *EX PARTE* SAME, *IN RE* THE IMPERIAL FERTILIZER CO. v. SAME.

1. APPEAL—SUPREME COURT.—This Court will not consider a question not passed on by the Court below, except one of jurisdiction. *Divided Court.*

2. JUDGMENT BY CONFESSION—JUDGMENT.—A judgment confessed by a person in a county other than the one in which he resides is void for want of jurisdiction. *Divided Court.*

3. IBID.—A DEPUTY CLERK may take a confession of judgment. *Divided Court.*

4. IBID.—The statements upon which the judgment in these cases are based are sufficient. *Divided Court.*

5. IBID.—The statement upon which the judgment is based is not untrue. *Divided Court.*

6. TWO OFFICES—POSTMASTER—NOTARY PUBLIC.—A person may hold the offices of postmaster and notary public at the same time. *Divided Court.*

Before BENET, J., Orangeburg, June, 1896. Affirmed.

Motion on the part of Ware Furniture Company to set aside the five judgments mentioned in caption, confessed to the plaintiffs therein by J. E. Steadman. The Circuit decree is as follows:

These various matters came before me on the motion of the Ware Furniture Company, a judgment creditor, junior to the several judgment creditors named above. It was sought to vacate the several judgments by confession obtained against the defendant, Steadman, by these senior judgment creditors, on six various grounds. But the view I take of the case makes it unnecessary to consider more than one of these grounds, namely: "That when the said judgments were made and entered, the said Court had no jurisdiction, neither the defendant nor the plaintiffs being residents of the county of Orangeburg, but that in each of said judgments by confession the plaintiffs and the defendant were residents of other counties." In an agreed statement of facts upon which the motions were heard, it is admitted that the plaintiffs and the defendant were all residents, not of Orangeburg County, where the judgments by confession were entered, but of other counties. This admitted fact constrains me to sustain the plea to the jurisdiction made by the junior judgment creditor, and to hold that, for lack of jurisdiction in the Court where the confessions were entered, said judgments by confession must be vacated and set aside as null and void. Our Code of Civil Procedure treats of judgments by confession in chapter III., of title 12, sections 383, 384, and 385. It seems to me that a candid consideration of these three sections necessarily leads to the conclusion that a judgment by confession should be entered in the county of which the defendant is a resident, and filed with the clerk of the court of common pleas of that county, or with a trial justice (now magistrate) of that county, when for an amount not exceeding $100. The entering and filing of a judgment not only gives the creditors a lien upon the debtor's property, but it gives notice to the world of the existence of that lien. The spirit of the law would be violated and one of its main purposes defeated, if a debtor in Barnwell County, as in this case, should be suffered to enter a confession of judgment in the Court of Common Pleas for Orangeburg County; or that a debtor

in Horry County should file his statement for judgment by confession in the Court of Common Pleas for the county of Pickens or of Hampton. If this could lawfully be done, then would it be equally lawful for an Horry County debtor to confess judgment for $100 or less in a magistrate's court in distant Pickens or Hampton. It is worthy of note that section 385 reads: "The statement may be filed with *the* clerk of *the* court of common pleas, or with *a* trial justice." The definite article "*the*" in the first case, and the indefinite "*a*" in the second, plainly point to the fact that there is only one clerk of the court of common pleas with whom the statement may be filed, namely: the clerk of the debtor's county of residence; but that there are several trial justices in the county, any one of whom would have jurisdiction. If it had read, "may be filed with '*a*' clerk of '*a*' court of common pleas," the opposite view might be tenable.

I am not forgetful of the fact that in a recent manuscript decision of our Supreme Court (*Drake & Son* v. *Steadman,* filed 23d March, 1896), Mr. Chief Justice McIver, referring to this very question, says: "We must not be understood as saying, or even intimating, that a judgment by confession is void because it is entered in a county in which the judgment debtor does not reside at the time of its entry." Until, however, the Supreme Court shall distinctly enunciate the contrary doctrine, I shall feel bound to agree with the doctrine laid down in Freeman on Judgments. In section 547 of that work (third edition), the learned author says: "Judgments by confession are in no wise exempt from the rule applicable to other judgments—that, to be valid, they must be entered in a court having jurisdiction over the subject matter of the action. Though no adjudication is, in fact, required in entering a judgment of confession without action, yet it has all the qualities, incidents, and attributes of other judgments; and can not be valid unless entered in a court which might have legally pronounced the same judgment in a contested action." This latter sentence, in my opinion, furnishes the true test; and tried by

this test, the judgments by confession in the cases under consideration must be pronounced invalid.  It is admitted that the Court of Common Pleas for Orangeburg County, where the judgments by confession were entered, would have had no jurisdiction to pronounce the same judgments in contested actions either at law or in equity.  It is also admitted that the same Court could not acquire jurisdiction by the consent of the defendant.  And, with my view of the matter, I am bound to hold that that Court had no jurisdiction.  Such being the case, no valid judgment could be rendered by it.  It is argued that the fact that the defendant, Steadman, had real property in Orangebury County should be considered by the Court.  This admitted fact can not alter the jurisdictional status.

It is, therefore, ordered, adjudged, and decreed, that the judgments by confession in the causes set forth in the caption of this decree be, and the same are hereby, declared to be invalid, null, and void; and they are hereby vacated and set aside; and the clerk of the court of common pleas for Orangeburg County is hereby ordered to mark them accordingly.

From this decree the plaintiffs in each of the said judgments by confession appeal, on the following exceptions:

I.  Because the Circuit Judge erred in holding that the confessions of judgment were null and void for lack of jurisdiction in the Court where the confessions of judgment were entered.

II.  Because his Honor should have held that the Court of Common Pleas, sitting in any county of the State, is a court of general jurisdiction; that it is incumbent upon the party questioning the jurisdiction to show the limitation thereon; and that there is no territorial limitation upon the jurisdiction of the Court of Common Pleas in regard to a confession of judgment.

III.  Because his Honor erred in holding that, under sections 383, 384, and 385 of chapter III., title 12, of the Civil

Code of Procedure, there is a limitation upon the jurisdiction of the Court of Common Pleas in regard to confessions of judgment, whereby a confession of judgment to be valid must be entered in the Court of Common Pleas for the county where the defendant resides.

The attorney for the respondent duly served the following notice: Please take notice, that the Ware Furniture Company, plaintiff, respondent, on the call of this case will move to sustain the judgment of the Circuit Court, and to have said judgment decreed to be null and void on other grounds than those set forth in said decree, to wit: I. Because the confessions were made and filed with W. G. Albergotti, an alleged deputy clerk of Orangeburg County, and not before the clerk of the court. II. Because the statements on which said confessions were founded were each for itself insufficient. III. Because the statement for and on account of which the judgment in favor of the Imperial Fertilizer Company was confessed is not only not sufficient, but is untrue. IV. Because the defendant, J. Elbert Steadman, swore to, or attempted to swear to, said affidavits on which said confessions of judgment are based, before J. D. Milhous, who was, at that time, to wit: on March 3d, 1894, a United States officer. V. Because the statement on which each of the judgments were confessed has never been sworn to, as provided by law.

*Messrs. Abial Lathrop,* and *Trenholm, Rhett & Miller,* for appellant, cite: *There is but one Court of Common Pleas:* Con. 1868, art. 4, secs. 1, 16, 17; 13 S. C., 441; 17 S. C., 153; Code, 144, 145, 146, 383, 385; 3 Hill, 225. *What duties deputy clerk may perform:* Rev. Stat., 778. *Statements of confession sufficient:* Code, 384, 385; 15 S. C., 44; 22 N. Y., 418; 38 Bar., 143. *Incompatible offices:* 9 S. C., 156; 7 S. C., 21.

*Mr. S. G. Mayfield,* contra, cites: *Court must have jurisdiction of defendant:* Code, 144, 145, 146; 28 S. C., 313;

25 S. C., 385; 11 S. C., 135; 16 S. C., 276; 25 S. C., 382; 24 S. C., 392; 28 S. C., 313; 23 Barb., 402. *Clerk must enter judgments:* Rev. Stat., 778; Beckham *v.* Corton, MSS. Decision, 1829. *Statements insufficient:* Code, 384; 17 S. C., 450; 17 N. Y., 9; 20 How., 267; 11 How., 503; 21 Barb., 152; 30 Barb., 185; 20 N. Y., 447; 24 N. Y., 325, 518; 30 N. Y., 428; 22 N. Y., 418.

March 31, 1897. The first opinion was delivered by

MR. JUSTICE POPE. By agreement, the five above stated cases are to be heard together on appeal upon one "Case," and exceptions. It seems that, after due notice, a motion was made in each of the above entitled causes, to declare the judgment by confession in each of said causes null and void, and to vacate the same, which came on to be heard before his Honor, Judge Benet, on the 20th day of January, in the year 1896, in the Court of Common Pleas for Orangeburg County. This motion was made by the respondent here, the Ware Furniture Company, and was based upon the following grounds: *First.* That when the said judgments were made and entered the said Court had no jurisdiction, neither the plaintiffs nor the defendant being residents of the county of Orangeburg; but that in each of said judgments by confession the plaintiffs and the defendant were residents of other counties. *Second.* Because the confessions were made before and filed with W. G. Albergotti, an alleged deputy clerk of Orangeburg County, and not before the clerk of the court. *Third.* Because the statements on which said confessions were founded were each for itself insufficient. *Fourth.* Because the statements for and on which the judgment in favor of the Imperial Fertilizer Company was confessed was not only not sufficient, but is untrue. *Fifth.* Because the defendant, J. Elbert Steadman, swore to, or attempted to swear to, said affidavits, in which said confessions of judgment are based, before J. D. Milhous, who was at that time, to wit: on March 3d, 1894, a United States officer. *Sixth.* Because the state-

ments on which each of the judgments were confessed have
never been sworn to as provided by law. At the hearing
before Judge Benet an agreed statement of facts and cer-
tain testimony used in another case were submitted.

By the decree of Judge Benet, he expressly confined him-
self to the question whether, it being admitted that the
plaintiffs in each of these five cases were residents of Charles-
ton County, in this State, and not residents of the county
of Orangeburg, and, also, that the defendant, J. E. Stead-
man, in each of those five cases, was not a resident of the
county of Orangeburg, but was a resident of the county of
Barnwell when such confessions of judgment were made by
him, a judgment could be confessed by said J. E. Steadman
before the clerk of the court of common pleas for Orange-
burg County? The Circuit Judge having decided that such
confessions of judgment were null and void, because there
was no jurisdiction in such Court of Common Pleas for
Orangeburg County, he very properly declined to consider
any other questions presented for his consideration.

The holders of these judgments by confession have ap-
pealed from this decree; and at the same time, under a pro-
per notice therefor, the respondent insists that this
Court shall decide that the judgment of Judge Benet
is sustainable under the second, third, fourth, fifth,
and sixth grounds set out in their notice, which grounds
we have already set out in this opinion. Inasmuch, how-
ever, as we shall hereafter show, there was no error in the
decision of the Circuit Judge as to the matter of jurisdic-
tion of the Court of Common Pleas for Orangeburg County,
we might, on that ground, decline to dispose of these
grounds of the respondent, before considering the question
of jurisdiction. It is quite true, that the respondents have
pursued the plan laid down in the case of *Wienges* v. *Cash*,
15 S. C., 44, for in that case, at page 57, it is said: "From
the judgment below both parties have appealed, though the
notice of appeal on the part of the plaintiff ought, properly,
to have been a notice that if this Court should find itself

unable to sustain the judgment below on the ground upon which it is rested by the Circuit Judge, then plaintiff would insist that such judgment should be sustained on the grounds mentioned in his notice of appeal." The practice herein suggested and approved by this Court has, since that time, been followed in this State. An investigatfon of the case cited will show that Judge Kershaw had actually passed upon the grounds included in respondent's notice in that case, and had overruled them. It is thus patent that each of those matters—any one of which would have been a good cause to upset the confession of judgment attacked in that case—had been passed upon in the Circuit Court, and went to the merits thereof. In the case at bar, however, as before stated, Judge Benet refused to consider any other question than that of jurisdiction. We are inclined to hold, under this notice of respondent, that we ought not to pass upon these questions, for the reason that they have not been considered on the Circuit. Of course, this remark of ours must not be understood to embrace any question of jurisdiction; such questions can be raised in this Court for the first time, and notwithstanding the Circuit Judge has not passed upon them. Having thus declined to pass upon the questions raised by the respondent, we will now consider the grounds of appeal presented by the appellants.

The grounds, though three in number, raise, and are intended to raise, but the single question of jurisdiction. The report of the case should set out the decree of Judge Benet and the exceptions thereto.

It has been suggested in the argument of the appellants in this Court that: "*1*. Under the Constitution, there is but one Court of Common Pleas established in the State, the same Court sitting in the different territorial divisions of the State. *2*. That the Court of Common Pleas is a court of general jurisdiction, including all civil matter, except such as are excluded by the Constitution or statutes of the State. *3*. That the limitation upon the jurisdiction of the Court of Common Pleas, with refer-

ence to the trial of certain actions in the county where the defendant resides, applies only to *actions* at law or equity. 4. That a confession of judgment is not *an action* within the meaning of the statute, but is expressly provided the creditor as the means of securing his debt, without resort to an action. 5. That the Court of Common Pleas being a court of general jurisdiction, without limitation as to confession of judgment, such confessions may be made in said Court in any county of the State." It needs but a glance at the provisions of the Constitution, and those of the statutes touching the Court of Common Pleas, to see that there is provided but one such Court for the entire State. See sections 1, 16, and 17 of article 4 of the Constitution of the State, adopted in 1868. Of course, it is therein provided that such Court shall sit in each county of the State. Such Court is one of general jurisdiction. See *Barrett* v. *Watts*, 13 S. C., 441; *Ex parte Lewie*, 17 S. C., 153; *Chafee* v. *Postal Tel. Company*, 35 S. C., 378. Nor is it at all difficult to see that a confession of judgment is not an action, for the statute which provides for it is clear and distinct that such is taken *without action*. The serious trouble grows out of the position that the limitations upon the jurisdiction of the Court of Common Pleas apply only to *actions* at law or in equity, and do no apply to confessions of judgment. Our Code defines an action to be "an ordinary proceeding in a court of justice by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." Such an action is commenced by the service of a summons. See section 120 of the Code. In an action pleadings are requisite. See sections 161 to 176, inclusive. A judgment is defined thus by section 266 of the Code: "A judgment is the final determination of the rights of the parties in the action." Now, let us reproduce the sections of our Code that authorize a confession of judgment: "Section 383. A judgment by confession may be entered without action, either for money due or to become

due, or to secure any person against contingent liability on behalf of the defendant, or both, in the manner prescribed in this chapter.   Section 384. A statement in writing must be made and signed by the defendant, and verified by his oath, to the following effect: 1. It must state the amount for which judgment may be entered, and authorize the entry of judgment therefor.   2. If it be money due, or to become due, it must state concisely the facts out of which it arose, and must show that the sum confessed therefor is justly due, or to become due.   Section 385. The statement may be filed with the clerk of the court of common pleas, or with a trial justice, if the amount for which judgment is confessed shall not exceed the sum of $100, who shall enter judgment indorsed upon the statement for the amount confessed, with $5 for plaintiff's attorney's costs, when the confession is entered by an attorney, and the usual fees provided by law to the clerk of the court of common pleas, or trial justice, as the case may be, for entering up judgment and issuing executions in any case, together with any necessary disbursements by the plaintiff.   The statement and affidavit, with the judgment indorsed thereon, shall thereupon become the judgment roll.   Executions may be issued and enforced thereon, in the same manner as upon judgments in other cases in such Courts." * * * It is certain that the judgment, in the case of a confession, has all the attributes of a judgment obtained in an action: it is to be enrolled in the abstract of money judgments in the clerk's office; it supports an execution; it is capable of being abstracted, under the Code, and sent to other counties than that wherein it was obtained; and it can be renewed just as other judgments. *King* v. *Belcher*, 30 S. C., 381.   These observations, however, do not reach the difficulty to be overcome in the denial of jurisdiction.   Our Code has been repeatedly construed, so far as section 146 is concerned, to be mandatory in requiring the service of summons, out of the Court of Common Pleas, to be served on the defendant in the county where he resides, and our decisions have re-

peatedly held that a judgment in an action began in a different county from that wherein the defendant resides is a nullity. *Trapier* v. *Waldo*, 16 S. C., 276; *Steele* v. *Exum*, 22 S. C., 276; *Bacot* v. *Lowndes*, 24 S. C., 392; *Ware* v. *Henderson*, 25 S. C., 385. This is so because the law is expressly so written. But in the sections governing confessions of judgment there is not one word of a positive enactment requiring the same, in order to be valid, to be taken before the clerk of the court of common pleas of the county where the defendant resides. The Circuit Judge relied upon the presence of the definite article "the" in section 385 of our Code (which we have heretofore quoted), in the sentence, "The statement may be filed with *the* clerk of the court of common pleas," &c., as fixing the territorial limit of the Court of Common Pleas to that of the county where the defendant resided; and he also laid great stress upon the language of Mr. Freeman, in his work on Judgments (section 547, third edition): "Judgments by confession are in no wise exempt from the rule applicable to other judgments—that, to be valid, they must be entered in the Court having jurisdiction over the subject matter of the action. Though no adjudication is, in fact, required in entering a judgment of confession without action, yet it has all the qualities, incidents, and attributes of other judgments; *and cannot be valid unless entered in a Court which might have legally pronounced the same judgment in a contested action*" (italics ours). The learned author contented himself by quoting the case of *Lanning* v. *Carpenter*, 23 Barbour, 402, in support of this proposition, so suggests the appellant here, thereby intimating that the author's views on this subject are bottomed upon this citation alone, but this is not of necessity true. We could just as well suppose that a jurist, who boldly advances a proposition of law, has beforehand thoroughly digested the principles which of necessity enter in to make it sound, and merely used the case cited as an illustration. But leaving this matter in abeyance, so to speak, we would ask, are there

not some expressions used in section 385 of our Code which necessitate the construction adopted by the Circuit Judge? It will be recalled that we have already adverted to the language of this section to show that there may be renewals of these judgments of confession. It seems to us that this judgment having been entered up in Orangeburg County, when it is desired to be renewed, the residence of the defendant being in Barnwell County, how could it be renewed by the service of a summons upon the defendant? Bear in mind, this is a judgment for money alone; that it must be renewed as all other judgments are; that a summons must be served upon the defendant in order to do this; that under the law it (the summons) can only issue out of the Court of Common Pleas in the county where he resides; and that this defendant resides in Barnwell County, and not in Orangeburg County. This is only a test of the law, but does it not show that of necessity the law must be construed as requiring the judgment confessed, in order to be valid, to be entered up in the Court of Common Pleas for Orangeburg County? It seems so to us. The appellant relies, however, with great confidence, on the case of *Martin & Co.* v. *Bowie*, 3 Hill, 225, as establishing the proposition that in our own State, while construing that provision of the act passed in 1821 which required the confession of judgment to be entered in the county (then district) wherein the defendant resided, it was held, that having entered the confession in a county different from that wherein he resided, the Court held that such was the personal privilege of the defendant, and that it was competent for him to waive the same; and that having done so, the judgment was valid, even against other creditors of the defendant who sought to set it aside. The law in South Carolina prior to the adoption of the Code was that, while the process was usually served upon the defendant in the county (then district) where he resided, yet he could be served if found in some other county; or he might accept service. *Marshall* v. *Drayton et al.*, 2 N. & McC., 25, Statutes 1736,

1737.   So that when this fact is remembered, to wit: that a person might waive, or have waived for him, his right to be served with process while in the county where he resided, it is not difficult to see how the case of *Martin & Co.* v. *Bowie, supra*, was decided as it was.   It is not so now in this State.   It is imperative, as we before remarked, in order that the Court of Common Pleas shall acquire jurisdiction in all cases, except in those cases specially excepted in sections 144 and 145 of the Code, to have the trial in the county where the defendant resides.   These views, in addition to those expressed by the Circuit Judge, seem to sustain the point that there is something in the provisions of the Code which require that a confession of judgment, to be valid, must be taken in the county where the defendant resides.

We cannot agree that the Court of Common Pleas, although a court of general jurisdiction, is without limitation as to confessions of judgment, and, therefore, that they can be made in any county in the State.   Our reasons are stated in the views we have hereinbefore set forth.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

JUSTICE GARY concurs in opinion of Justice Pope.

MR. CHIEF JUSTICE MCIVER, *dissenting*.   This was a motion made by the Ware Furniture Company, a junior judgment creditor of the said J. E. Steadman, to have certain confessions of judgments, in favor of the several plaintiffs in the above named cases against the said J. E. Steadman, declared void upon the following grounds: 1st. Because the Court in which such judgments were entered had no jurisdiction, for the reason that neither the plaintiffs nor the defendant were residents of the county of Orangeburg, in which the judgments were entered.   2d. Because said confessions were made before the deputy clerk, W. G. Albergoti, and not before the clerk of the court of common pleas for Orangeburg County.   3d. "Because the statements on

which said confessions were founded were each for itself insufficient." 4th. Because the statement on which the confession of judgment in favor of the Imperial Fertilizer Company was entered was not only insufficient, but also untrue. 5th. Because the affidavits in each of the cases purports to have been before J. D. Milhous, as a notary public of South Carolina, who was at the time a United States officer, and hence the affidavits were not sworn to as provided by law.

The motion was heard by his Honor, Judge Benet, upon the following agreed facts: 1st. That at the time of entering these judgments the said Steadman was a resident of Barnwell County, and the several plaintiffs were residents of the county of Charleston. 2d. That at said time G. L. Salley was clerk of the court of common pleas for the county of Orangeburg, and the said W. G. Albergoti was his duly appointed deputy. 3d. "That each and every of the said judgments were afterwards, and on the same day, duly entered and enrolled as judgments of the Court of Common Pleas in and for the counties of Aiken, Barnwell, and Lexington by filing transcripts thereof in each of the said counties." 4th. That the defendant, J. E. Steadman, at the time of said confessions of judgments owned real estate in Orangeburg, Barnwell, Lexington, and Aiken Counties. 5th. "That on the 3d of March, 1894 (the day on which the affidavits purport to have been sworn to), J. D. Milhous was United States postmaster at Denmark, in the county of Barnwell, and at the same time was a duly appointed and qualified notary public under an appointment made previous to his appointment as postmaster." At the hearing certain testimony given by Steadman in a previous case of Drake v. Steadman and others, which is set out in the "Case," was also used, apparently by consent. The Circuit Judge having reached the conclusion that the jurisdictional objection presented in the first ground for the motion was well taken, found it unnecessary to consider any of the other points raised, and granted the motion and rendered the decree,

which will be incorporated in the report of this case, declaring the judgments null and void, vacating and setting aside the same, and directing the clerk to so mark them.

From this judgment the plaintiffs in the several judgments appeal upon the grounds set out in the record, which practically raise the single question of jurisdiction. The respondent also, in accordance with the proper practice, has given notice that this Court would be asked, upon the hearing of this appeal, to sustain the judgment appealed from, upon the other grounds set forth in the notice of the motion, as hereinabove stated.

The first question to be considered is the jurisdictional question upon which the Circuit Judge bases his decree. That question may be stated as follows: Does the fact that a confession of judgment, under the provisions of chapter III., of title 12, of part II., of the Code of Procedure, sections 383–385, is entered and filed in the office of the clerk of the court of common pleas for a county other than that in which the defendant resides, render such judgment void for lack of jurisdiction? It is conceded that the Court of Common Pleas is a court of general jurisdiction, and if so, then it is clear that any one who asks to have such jurisdiction limited in any way, must be able to point out some constitutional or statutory provision establishing such limitation. It is not pretended that there is any constitutional provision prescribing any such limitation, as is here sought to be imposed upon the general jurisdiction of the Court of Common Pleas. But the contention is that such limitation is to be found in section 146 of the Code. That section constitutes a part of title IV., of part 2, of the Code of Procedure, the declared purpose of which is to treat "of the place of trial of civil actions;" and accordingly, after declaring where actions for certain purposes "must be tried," declares, in section 146, as follows: "In all other cases the action shall be tried in the county in which the defendant resides at the time of the commencement of the action." The limitation thus imposed upon the jurisdiction of the Court of Common Pleas applies

only to *the trial of actions*, as is clearly shown by the heading of the title—"Of the place of *trial* of civil *actions*"—as well as by the express terms used in section 146, "the *action* shall be *tried*," &c.; and how such a limitation can be applied to anything else, it is very difficult, if not impossible, to conceive.   That a confession of judgment, under the provisions of the Code, heretofore referred to, cannot, in any sense, be regarded as an action, is abundantly manifest from the express terms of the statute.   The heading of the chapter in which these provisions are found, designed to indicate its purpose, is in these words: "Confession of judgment *without action*," and in section 383 the words are: "A judgment by confession may be entered *without action*," &c. Again, in section 148 of the Code, it is provided as follows: "Civil actions in the courts of record of this State shall be commenced by service of a summons;" and yet in the chapter providing for confessions of judgment, no summons is required to be issued, and none provided for or contemplated. This shows that the law-making power did not intend that a confession of judgment should, in any sense, or for any purpose, be regarded as an *action*.   How, then, a statutory provision intended, as is shown by its express terms, to limit the power of a court of general jurisdiction in one respect, to wit: as to the place of *trial* of civil *actions*, can be so construed as to apply to something totally different—a confession of judgment—in which there is not and could not be any *trial*, and which is expressly declared to be *not* an *action*, it is very difficult, if not impossible, to comprehend.   To maintain such a position, it would be necessary to argue that, because the legislature has seen fit to limit the powers of a court of general jurisdiction in one particular instance, the same limitation must be applied to every other instance in which the court is called upon to exercise its jurisdiction. Such a mode of reasoning does not commend itself either to the logician or to the expounder of law.   The Circuit Judge rests his conclusion, largely, upon a passage quoted from Freeman on Judgments, section 547, 3d edition, where it is

said: "Judgments by confession are in no wise exempt from the rule applicable to other judgments, that to be valid they must be entered in the Court having jurisdiction over the subject matter of the action. Though no adjudication is, in fact, required in entering a judgment of confession without action, yet it has all the qualities, incidents, and attributes of other judgments; and cannot be valid unless entered in a court, which might have legally pronounced the same judgment in a contested action." While the high authority of this learned writer is freely acknowledged, yet at the same time this Court is not bound to accept his *dicta* as conclusive, especially when this Court is undertaking to construe the legal effect of one of our own statutes. But, waiving this, the authority does not support the conclusion which it is cited to support. When a judgment is assailed for lack of jurisdiction in the Court by which it is rendered, two distinct and separate inquiries, involving totally different principles, are presented. 1st. Did the Court have jurisdiction of *the subject matter?* 2d. Had the Court acquired jurisdiction of *the person* against whom the judgment was rendered? If the Court has jurisdiction of the subject matter, and has failed to acquire jurisdiction of the person, the judgment is void. So, on the other hand, if the Court has no jurisdiction of the subject matter, the judgment is void, even though full jurisdiction of the person may have been acquired. Now it is manifest from the terms used in the passage above quoted that the learned author was speaking of jurisdiction over *the subject matter*, and not of jurisdiction over the person, for he says the judgment "must be entered in the Court having jurisdiction over the subject matter;" and in the next sentence, where he says that the judgment "cannot be valid unless entered in a Court which might have legally pronounced the same judgment in a contested action," he manifestly means that the Court must have jurisdiction over *the subject matter* in order to render the judgment valid. If there could be any doubt about this construction of the passage quoted, such doubt

would be dispelled by an examination of the only case cited to sustain the proposition laid down in such passage. The argument drawn from the use of the definite article "the" in section 385 loses all of its force when it is seen that the language there used is permissive merely, and not imperative—"may," *not* must or shall, "be filed," &c., especially when it is seen that the language used in the preceding section is imperative: "A statement in writing *must* be made," &c. Besides, such an argument would scarcely be sufficient to warrant this Court in extending, *by inference merely*, a limitation upon the powers of a Court invested with general jurisdiction. It must be concluded, therefore, that the Circuit Judge erred in holding these judgments were void for lack of jurisdiction, and in granting the order appealed from upon that ground.

The next inquiry is whether these judgments should be set aside upon any of the other grounds mentioned in the notice of the motion, and renewed here by proper notice. The first of these grounds, based upon the fact that the confessions were made before the deputy clerk instead of the clerk himself, is effectually disposed of by the provisions of section 778 of the Revised Statutes, in which it is declared that the deputy clerk may "do and perform any and all of the duties appertaining to the office of his principal."

The second ground is open to the objection that it is entirely too general to be considered, inasmuch as it fails to indicate a single particular in which the statements were insufficient. Besides, an examination of the case of *Wienges* v. *Cash*, 15 S. C., 44, in which this matter was fully considered, will show that the statements were fully sufficient. The case of *Kohn* v. *Meyer*, 19 S. C., 190, relied on by respondent's counsel, is manifestly not in conflict with *Wienges* v. *Cash*, *supra*, for that case is cited and relied upon by the Court in *Kohn v. Meyer*. Moreover, even a glance at the Kohn case shows that the main ground upon which the "statement" was held to be insufficient was,

that the testimony of both of the Myers, plaintiff and defendant, in the confession of judgment, showed that the "statement" was false; or, to say the least of it, so grossly inaccurate, as to mislead those who might desire to inquire into the consideration of the debt upon which the confession was founded. So, also, in the case of *Ex parte Carroll*, 17 S. C., 446, the rule laid down in *Wienges* v. *Cash*, *supra*, is explicitly recognized. It is clear, therefore, that, even if the second ground relied on by respondent had been stated in such a form as would entitle it to be considered, it could not be sustained.

The third ground is likewise open to the objection of being too general for consideration by this Court, inasmuch as there is nothing stated which in any way indicates in what respect the "statement" therein referred to is either insufficient or untrue. But even were it otherwise, this ground could not be sustained. What has been already said is sufficient to dispose of the objection to the sufficiency of the "statement," and it only remains to inquire whether it has been shown that such statement is untrue. As may be gathered from the argument of counsel for respondent, the only point upon which it is claimed that the "statement" upon which the confession of judgment to the Imperial Fertilizer Company is untrue, is that in such statement the debt is claimed to have arisen from the purchase of "fertilizer materials," while Steadman, in his testimony in the Drake case, says he never bought "any materials for making fertilizer from the company;" and again he says: "I had not bought any material for manipulation; I bought manufactured goods." While again he says: "I bought kainit, acid, and ammoniated fertilizer." In answer to the direct inquiry: "Had you bought fertilizer material from them?" his answer is: "Yes, sir; in the early part of the year." "What did you buy?" "Two and a half per cent. ammoniated goods, acid, possibly kainit, fertilizer usually used in this section of the country." It is manifest, therefore, that the charge of untruthfulness in the "state-

ment" is based solely upon a fine-spun distinction attempted to be drawn between materials for the manufacture of fertilizers, and fertilizers manufactured; "a distinction without a difference," so far as this matter is concerned. The witness distinctly says that he bought from the Imperial Fertilizer Company "kainit, acid, and ammoniated fertilizer;" and if they are not "fertilizer materials," it is difficult to say what would be. It will be observed that in the "statement" the debt is not alleged to have been incurred for the purchase *of material to be used in manufacturing fertilizers*, but for the purchase of "fertilizer materials," and the testimony of the witness shows that the debt was incurred for the purchase of fertilizer materials—kainit, acid, and ammoniated fertilizers. It is difficult to conceive how it can be seriously contended that the testimony shows the "statement" to be untrue.

The only remaining inquiry is that presented by the fourth and fifth grounds upon which respondents ask this Court to sustain the judgment below. These two grounds really make the single question—whether the fact that J. D. Milhous, before whom the affidavits were sworn to, held the office of United States postmaster at the time, disqualified him from performing the duties of a notary public, under an appointment made previous to his appointment as postmaster. No question is made as to the fact that Milhous was a duly appointed and qualified notary public, as that fact is distinctly admitted. But the point made is, that by accepting the office of postmaster, he thereby—*ipso facto*—became disqualified to act as notary public. No authority has been cited to sustain such a position, and it would be very difficult, if not impossible, to find any. The rule, at common law, was that the same person might hold two offices at the same time, unless they were incompatible. And the rule as to the test of incompatibility is thus laid down in 3 Bacon Abridg. Title Offices, K. Upon the authority of Lord Coke, "offices are said to be incompatible and inconsistent, so as to be

executed by the same person, when, from the multiplicity of business in them, they cannot be executed with care and ability; or when their being subordinate or interfering with each other, it induces a presumption they cannot be executed with impartiality and honesty." And in 1 Dillon on Mun. Corp., in a note to section 166, it is said: "Incompatibility in offices exists where the nature and duties of the two offices are such as to render it improper, from considerations of public policy, for one incumbent to retain both." The inquiry, then, is, whether there is any incompatibility in the two offices of notary public and postmaster. None has been suggested, and it is not easy to conceive of any. Indeed, in a small community it would seem to be a convenience to the public that a postmaster should be a notary public, for he has a well known public place of business, where he is required to attend constantly, and is, therefore, easily accessible to those who might desire to make affidavits, &c. Besides, it is not unworthy of mention, that in sec. 2, of art. II., of the present Constitution, while there is a special provision forbidding a person from holding "two offices of honor or profit at the same time," special exception is made of the office of notary public. Now while, of course, the present Constitution does not apply to this case, inasmuch as the affidavits here in question were made before the present Constitution was adopted, yet this provision does show (and it is only cited for that purpose), that in the opinion of the highest authority in this State—the sovereign people—as expressed by their delegates in convention assembled, the office of notary public is not incompatible with any other office. The only remaining inquiry, therefore, is, whether there is any constitutional or statutory provision forbidding a person from holding the office of notary public and postmaster at the same time. No such provision has been cited and none has been found. On the contrary, while the Constitution of 1868, which was in force when these affidavits were taken, does forbid certain officers, viz: the governor, the members of the general as-

sembly, and the judges, from holding any other offices at the same time, it contains no such prohibition as to the office of notary public, and, therefore, leaves that office to be governed by the common law rule, which, as has been shown, does not forbid a notary public from holding the office of postmaster.

It must be concluded, therefore, that, in no view of the case, can the judgment and order appealed from, be sustained, and, hence, the same should be reversed.

JUSTICE JONES concurs in dissenting opinion of Chief Justice.