13074

STATE v. BOLIN

(157 S. E., 79)

November, 1929.

*Mr. G. W. Speer,* for appellant,

*Mr. Sam R. Watt,* Solicitor, for the State.

February 25, 1931.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

The appellant, E. B. Bolin, was indicted in the Court of General Sessions for Cherokee County for violation of what we usually term the "prohibition laws" on August 2, 1929. The indictment is not set out in the record, but we gather that it contained five counts, growing out of the same alleged transaction.

L. P. Wilson was the only witness offered by the State. He testified that, in company with Albert Hope, he visited the home of the appellant in Cherokee County on August 2, 1929; that he gave Hope $1.50 to purchase whisky from

the appellant; that Hope handed the money to Bolin, and he saw Bolin deliver a bottle of whisky, which was exhibited in the Court, to Hope. The witness also testified that on July 31, 1929, accompanied by Hope, he visited the appellant's place; that Hope told Bolin he wanted a pint of whisky, and in a moment or two Bolin, after going out the back door, returned and delivered the pint of whisky requested, remarking as he made the delivery, "There is some of as good stuff as you ever smacked your lips on."

The appellant, testifying for himself, and offering his clerk, one Hughes, and his wife as witnesses to back up his testimony, vigorously denied any sale of whisky, or that he had whisky in his possession, at the times claimed by the witness for the State. The appellant frankly admitted that he had formerly engaged in the illegal handling of intoxicating beverages, but asserted that he had ceased to ply that trade in any manner whatsoever.

The appellant further sought to show by his testimony that he became aware on July 31st, when Wilson and Hope visited his place, that they "were trying to trap him"; that on the last visit to his home, presumably August 2nd, Wilson and Hope had a quart of whisky with them, and told him that they were going fishing and wished a half gallon of whisky and wanted to get a quart from the appellant. Appellant said he told them that he had no liquor at that time, but if they would let him have the quart they had, he would have some in about forty minutes, and thereupon Wilson and Hope sold him the quart of liquor, contained in two pint bottles, at the price of $2, which he paid, with the understanding that he was to deliver them the half gallon at the price of $4. Upon Wilson and Hope's return in a few minutes, he did not deliver the half gallon as he had promised to do, and "cussed them both out." Appellant further stated that Hughes and he took a drink of the whisky .purchased from Wilson and Hope, and that it was such "bad stuff" Hughes became sick because of the drinking, and Hughes

and the appellant poured the whisky out; and that afterwards he demanded a return of his money which Wilson and Hope declined to pay back. The appellant procured a warrant of arrest for Wilson and Hope on the charge of selling whisky, but this case seems not to have been pressed.

The transcript states: "At the close of the testimony the case was narrowed down to the third count in the indictment which charged" that the appellant "did willfully and unlawfully receive, accept and have in his possession spirituous, vinous, fermented, or malt liquors, or beverages, containing more than one per cent. of alcohol and used as a beverage, and for purpose of sale, against the form of the statute in such case made and provided, and against the peace and dignity of the State." We conclude from the statements contained in the transcript that the Solicitor entered a *nolle prosequi* as to all the counts set out in the indictment save the one from which we have quoted, the charge commonly referred to as "having in possession."

The verdict of the jury was guilty on the count submitted to them, and the appellant, after being refused a new trial, was sentenced by the presiding Judge, Honorable J. Henry Johnson, to serve at hard labor for a period of twelve months.

The five exceptions raise only two questions.

The first, second, third, and fourth exceptions relate to the failure of the Court to instruct the jury, at the request of counsel for the appellant: "If the defendant bought liquor from this prosecuting witness, not for any unlawful purpose, that the mere purchasing there and immediately afterwards, as he said, poured it out, the statute does not cover that transaction."

The request to charge was made verbally as the Court was concluding his instructions to the jury, and, in connection with the request, the presiding Judge said this:

"I refuse to charge that. And in that connection I say this, that I think the opinion you have reference to was de-

cided before the enactment of the quart a month Act; under the law as I understand it in this State, under the quart a month Act which remains upon our books unrepealed, that Act says it shall be unlawful for any person, firm, corporation or company to receive, store, or have in possession, any alcoholic beverages except as hereinafter provided; then the statute goes on to say you can receive it, you can have it in possession, provided you get it in a certain way, and says that every natural person above the age of 21 years may order and import one quart each month, for his or her personal use for medicinal purposes, provided he first obtains a permit to do so from the Judge of Probate, who is authorized under our statute to issue it."

Prior to the request of appellant's counsel, the Court, in the general charge, had already read to the jury Section 860 of the Criminal Code, referred to later, and, in connection with the reading, he made this statement:

"And the statute goes on to provide that every natural person above the age of 21 years may order or import one quart of alcoholic liquors or beverages for his or her personal use for medicinal purposes, provided he gets a permit from the judge of Probate, which officer is authorized to issue such permit."

We cannot say with certainty to what decision the presiding Judge and the counsel for appellant referred in discussing the request to charge. From the appellant's argument, however, we think the case was that of *City of Anderson v. Fant,* 96 S. C., 5, 79 S. E., 641. That case was decided October 8, 1913, prior to the enactment of some of our present "prohibition laws," as contained in Sections 860 to 885, both inclusive, of Volume 2 of the Code of 1922, originally enacted in 1917, and the defendant there was prosecuted for a violation of a municipal ordinance.

The count in the indictment in this case was framed under the provisions of Section 860, *supra,* which make it "unlawful for any person * * * to receive, store, keep or

have in possession * * * any alcoholic liquors * * * except as hereinafter provided." The misdemeanor with which the appellant was charged was that commonly referred to as "having in possession" as distinguished from storing. See *State v. Burns,* 133 S. C., 238, 130 S. E., 641.

It may be true, as contended by the appellant, that the holding in the *Fant case, supra,* that it was not a criminal offense in this State to purchase intoxicating liquors is still the law under our present "prohibition" statutes, since it does not appear that the General Assembly has in plain language denounced as a crime the ·purchase of intoxicating liquors. It does not seem to us at this time to be necessary to pass upon .that particular question, for we do not conceive it to be involved in the case.

The appellant here was not charged with the purchase of intoxicating liquors. He was indicted for unlawfully having such liquors in his possession. Under our "prohibition laws," referred to above, the possession of intoxicating liquors, not obtained in the manner provided in the statutes after their enactment, is a violation of the law. The instructions given by the presiding Judge on the request refused by him were in harmony with the statutes under consideration.

That our holding may be made, perhaps, a little more clear, it may not be amiss for us to say that the laws of this State regulating the shipment, transportation, etc., of alcoholic liquors are mainly taken from the Act of 1917, commonly called the "Quart-a-Month-Law" (30 Stat., 69), which Act is still in force, except as it may have been modified, although since its passage the Eighteenth Amendment to the Constitution of the United States and the Volstead Act of Congress (27 U. S. C. A.), have gone into effect.

The fifth exception raises the question that the sentence imposed by the trial Judge "was unjust, unreasonable and excessive, and in violation of Article 1, Section 19, of the Constitution." If all the appellant did was

to purchase a little whisky for his own personal use, as he contended, the sentence was, perhaps, very severe. But, unfortunately for the appellant, we cannot here accept without question his contention. Evidently the jury did not believe his statement, for if they had done so, it is more than probable that the verdict would have been one of acquittal. There was evidence on the part of the prosecution to show that the appellant had, before the date of the offense charged against him in the indictment, sold whisky to the prosecuting witness. The appellant, while claiming that he had reformed, admitted former violations of the "prohibition laws." The presiding Judge, on the scene of action, was in good position to ascertain from the appellant's conduct as a witness, and in other ways, if the appellant had really turned from his "bootlegging" ways, or if he was continuing in the business. The sentence would indicate that the Judge did not accept in the best of faith the statements of the appellant, and, from the record before us, we cannot say that his sentence, one within the terms of the statute, was contrary to the language and spirit of the provisions of the Constitution to which the appellant has appealed for relief.

The judgment of this Court is that the judgment below be, and the same is hereby, affirmed.

MESSRS. JUSTICES COTHRAN, STABLER and CARTER and MR. ACTING ASSOCIATE JUSTICE JOHN I. COSGROVE concur.