8664

CITY OF ANDERSON v. FANT.

LIQUORS.—AN ORDINANCE of a city should be construed in the light of the public policy of the State. So construing an ordinance of the city of Anderson prohibiting selling, transporting and storing illicit liquors, one who buys for another, liquor from one he knows is selling unlawfully, and takes it to him, is not guilty of a crime. MR. JUSTICE FRASER *dissents*.

*State v. Rookard,* 87 S. C. 444, *distinguished from this case.*

Before SHIPP, J., Anderson, February, 1913. Reversed.

Indictment against Milton Fant. Defendant appeals.

*Messrs. A. H. Dagnall* and *Leon L. Rice,* for appellant, cite: 23 Cyc. 182, 210.

*Solicitor P. A. Bonham* and *Messrs. Hood & Anderson,* contra. *Messrs Hood & Sullivan* cite: 63 S. C. 101; 58 S. C. 433; 2 McM. 234; 42 S. C. 231; 87 S. C. 443; 112 Pac. 32; 77 Am. St. R. 390; 73 S. C. 116; 49 S. C. 171; 55 S. C. 225, 251.

October 8, 1913. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. Defendant was convicted and sentenced for violating an ordinance of the city of Anderson against transporting contraband liquors. The facts stated in the record, as the basis of his conviction, are: "The defendant, at the request of two white men, purchased and obtained from a person within the city of Anderson, whom he knew was not authorized to sell, two pints of whiskey, and carried and delivered the whiskey to the said white men." In the order dismissing his appeal, the Circuit Court found that defendant, either as agent or principal, purchased the liquor from one whom he knew was not authorized to sell it; and held that, having obtained it through an unlawful sale, it was contraband, and the subsequent transportation of it was a violation of the ordinance.

From this statement of the facts and finding of the Court, we assume—in fact, it was conceded—that defendant's conviction was not based upon the finding that he was, in any degree whatever, a participant in the sale, or the agent of the seller, but solely upon the ground that, notwithstanding he was only the agent of the purchasers, he was, nevertheless, subject to punishment under the ordinance. It necessarily follows, from this construction of the statute and ordinances, that, if the white men, for whom he purchased the liquor, had themselves purchased it directly from the seller, and had carried it to their homes, they, too, would have been subject to the penalty of the law.

In construing the ordinance, we must bear in mind the law and policy of the State upon the same subject, and construe them so that there will be no conflict, because, to that extent, the ordinance would be void.

Section 794 of the Criminal Code of 1912 reads: "All alcoholic liquors and beverages, whether manufactured within this State or elsewhere, or any mixture, by whatsoever name called, which if drunk to excess will produce intoxication, are hereby declared to be detrimental, and their use and consumption to be against the morals, good health

and safety of the State, and contraband. It shall be unlaw-
ful for any person, firm, corporation or association within
this State to manufacture, sell, barter, exchange, receive,
accept, give away to induce trade, deliver, store, keep in
possession in this State, furnish at public places or other-
wise dispose of any spirituous, malt, vinous, fermented,
brewed or other liquors and beverages, or any compound or
mixture thereof which contains alcohol and is used as a bev-
erage, and which if drunk to excess will produce intoxica-
tion, except as hereinafter provided."

Section 825 makes it a misdemeanor to transport liquors
into the State or from place to place within the State, except
as therein permitted, and none of the exceptions include
defendant's case.

The ordinances of the city upon the same subjects are as
follows:

Sec. 49. "It shall be deemed a misdemeanor for any per-
son to sell, barter, exchange or give away in connection
with business or trade, any distilled, malt, vinous or other
alcoholic liquors or any intoxicating liquor or whiskey or
spirits of any kind, in the city of Anderson."

Sec. 51. "It shall be deemed a misdemeanor for any per-
son to transport, handle, store or conceal within the city of
Anderson, any illicit or contraband alcoholic liquors."

It will be observed that neither the State statute nor the
city ordinance penalizes the purchase of liquors. It has
never been the policy of this State to punish the buyer of
liquors. There is, therefore, no inhibition in the statutes
or ordinances against buying, except as it is the counterpart
of selling, which is prohibited; but, as between the two, the
seller alone is subjected to punishment. It may be that,
from a moral standpoint, the buyer is equally culpable with
the seller, and, doubtless there are circumstances under
which, viewed from that standpoint, he is the more worthy
of blame. But the Courts must accept, as the policy of the
State, that which is written in the statutes.

The reasons why the lawmakers have not seen fit to condemn the buyer as well as the seller are not material, because that is a matter for legislative rather than judicial consideration. But it may not be amiss to say that one of the reasons usually assigned—and a very cogent one—is that, if both were subject to punishment, neither could be compelled to testify against the other, upon the ground that no man can be compelled to furnish evidence against himself, and, for that reason, both would escape punishment.

The rule that statutes which prohibit the sale of intoxicating liquors are not to be construed so as to bring the purchaser, or those who act solely for him in making the purchase, within their condemnation is thus stated in the case of *Lott* v. *United States,* 205 Fed. 28: "It is uniformly held that statutes prohibiting the sale of intoxicating liquors are directed against the act of selling only, and that the offense is committed only by the vendor or some one who aids him in selling, and that the purchaser and those who aid him in the purchase are not guilty of aiding or abetting in the commission of the offense." Numerous authorities are cited which fully sustain the principle stated.

In the light of the established policy of the State, and of the universally recognized principle that penal statutes must be strictly construed, we cannot, without doing violence to both, sustain defendant's conviction. We cannot do so, without reading into the statute and ordinances that which the lawmakers have purposely refrained from writing into them. They do not condemn the buyer. We must assume that the lawmakers understood the use of the word "buy" quite as well as the word "sell," and that, if they had intended to condemn the buyer, they would have done so in language as plain as that used against the seller. We have no authority to extend the statute or ordinances by construction to include the buyer. To say that they may not be construed so as to penalize the buyer for the act of buying, but that they may be construed so as to penalize him for the

acts which must almost inevitably follow the buying, to wit, transporting and keeping in possession the liquor which he buys, would not only be an extremely technical construction, but it would be one so highly technical that it would not be warranted, even if it were invoked in favor of the defendant instead of against him, for, while the rule requires a strict construction in favor of defendant, it should not be strained or unnatural, or one which would thwart the clear intention of the lawmakers to be gathered from a reasonable interpretation of the language used.

It must appear, however, that the accused is within the spirit as well as the letter of the law. That he may be within the strict letter of the law is not enough, as was held in *State* v. *Rookard,* 87 S. C. 444, 69 S. E. 1076, where section 794, *supra,* was construed by the Circuit Court to make it a crime to keep liquor in one's possession, though it had been obtained lawfully, and was kept for a lawful purpose. The defendant was clearly within the letter of the statute. But this Court reversed the ruling, and held that the statute must be construed to mean "liquor which had been unlawfully obtained, that is, obtained in a manner not recognized as lawful by that act or the unrepealed provisions of the act of 1907, or to keep in possession for sale or some other use forbidden by the statute liquor lawfully obtained." It is now contended that the language of the Court above quoted warrants the holding that, as the defendant in this case obtained the liquor unlawfully, or in a manner not recognized as lawful by the act, he falls within its spirit as well as its letter. Strictly construed, the language used may possibly bear that construction. But that was not intended. The language of an opinion must always be read and construed in the light of the facts of the case under consideration, and, when so read, that above quoted does not bear the interpretation placed upon it. In that case, the sole question was, whether a citizen could lawfully keep liquor in his possession which he had obtained

for a lawful purpose. The Circuit Court had ruled that he could not—without regard to the manner of his acquiring possession or the purpose for which he kept it. This Court held that he could, if he kept it for a lawful purpose. In *State* v. *Nickels,* 65 S. C. 169, 43 S. E. 521, the Court, speaking through Mr. Chief Justice Gary, expressly held that the character of the liquor found in the possession of a citizen—that is, as to whether it was contraband or not— was to be determined by the purpose for which he had it, and said: "The question whether the liquor was contraband depended upon the purpose with which the defendant took it into his possession." In the Rookard case, the question as to how or in what manner the defendant obtained possession of the liquor was not involved, nor was it made an element of the decision, except in so far as the manner of obtaining possession was considered as throwing light on the purpose of it; as, for instance, if it should appear that one had obtained possession by manufacturing it—an act which is not only not recognized as lawful, but one which is positively prohibited under penalty—or for the purpose of selling, or other unlawful purpose.

But the question now before us—whether a citizen can lawfully transport and keep in possession for his own personal use liquor which he purchased from one who had no authority to sell it—was not considered or decided in that case. While obtaining it in that manner is unlawful, in one sense, it is not unlawful in the sense that it is a crime, at least so far as the buyer is concerned; and to say that the buyer cannot be punished for buying, but that he may be for acts which must necessarily immediately follow the purchase, to wit, the transportation and keeping in possession, is contradictory in terms. In speaking of obtaining possession unlawfully, in the Rookard case, the Court evidently did not use the word in the sense which it is now sought to give it. Suppose one should steal a pint of liquor from a dispensary and carry it home and keep it there for his own

personal use. Would it be contraband simply because he had obtained it in an unlawful manner? And could the thief be convicted of transporting and storing and keeping in possession contraband liquor? Yet, without doubt, he obtained it unlawfully.

The construction put upon the statute and ordinance by the Circuit Court makes them conflict with the policy of the State, in that it brings the buyer as well as the seller under the condemnation of the law, and deprives the State of the right to compel the buyer to testify against the seller, thereby frustrating one of the purposes of penalizing only the seller. If that construction is sustained, the buyer can refuse to testify, because the purchase almost necessarily implies transporting and keeping in possession. It is no answer to say that the prosecuting officer may agree not to prosecute him. The privilege of refusing to testify would still be his, and he could not be compelled to waive it.

If defendant had been convicted upon the finding, even by inference from the facts stated, that he was a participant in the sale, or the agent of the seller as well as the buyer, I should be satisfied to sustain the conviction. But the agreed facts and the finding of the Court exclude that hypothesis.

The greater weight of authority sustained the proposition that one who acts, in good faith, solely as the agent or messenger of the purchaser of liquors is not himself guilty of violating the law against selling thereof. But of course, this rule will not be allowed to shield a guilty participation in the sale; nor will the Courts tolerate an evasion of the law by any device, pretense or subterfuge. See *State* v. *Ito,* 114 Minn. 426, Ann. Cas. 1912, C. 631, where the authorities are collated.

Judgment reversed.

Mr. Justice Fraser, *dissenting.* I cannot concur in the opinion of the majority in this case. I know we are con-

struing an ordinance of the city of Anderson and not a statute of the State. An ordinance of a city, however, should not be construed with a total disregard of the public policy of the State from whose laws it derives its powers. It is the public policy of this State that "all alcoholic liquors and beverages, whether manufactured within this State or elsewhere, or any mixture by whatever name called, which if drunk to excess will produce intoxication, are hereby declared to be detrimental, and their use and consumption to be gainst the morals, good health and safety of the State and contraband." With this preliminary statement, the statutes go on to allow the sale under certain conditions, the main object of which is to protect the health and good morals of her citizens. In its dealings with this most difficult question, there appears the recognition of this fact, that there are liquors that are pure and liquors that are impure. The use of impure liquors is deemed peculiarly harmful. In order to prevent the use of that which is impure and most deadly, it provided that its own officers shall purchase with careful analysis and in order to prevent subsequent adulteration, its own officers shall have the exclusive right to sell to the citizens. The statute does not forbid the buying of liquor. The right to buy, however, is not a constitutional or inalienable right. The State may pass any law that is not forbidden by its Constitution. Those rights, therefore, that are not reserved by the Constitution, may not only be infringed upon, to the point of uselessness, but destroyed altogether.

Buying had not been forbidden. The defendant was not charged with buying. The right to buy may be rendered useless by forbidding the buyer to transport.

It will be observed that it is the policy of the State to prohibit the use of contraband liquor. If the legislature sees fit to hamper the unlawful sale by forbidding the transportation and not the purchase, it does not lie with the

Courts to say the thing is illogical and therefore is not the law.

Sec. 825, Crim. Code, 1912, prohibits the transportation of contraband liquors. The city of Anderson has the same policy, within its limited sphere, and by its ordinance provides:

Sec. 51. "It shall be deemed a misdemeanor for any person to transport, handle, store or conceal within the city of Anderson any illicit or contraband alcoholic liquors."

The appellant was found guilty of transporting contraband alcoholic liquors in the city of Anderson.

The case shows the following: "The defendant at the request of two white men purchased and obtained from a person within the city of Anderson, whom he knew was not authorized to sell, two pints of whiskey and carried and delivered the whiskey to the said white men."

The case further shows: "The defendant, Milton Fant, a negro, was tried and found guilty by the recorder of the city of Anderson of transporting alcoholic liquors in the city of Anderson."

The defendant was not charged with buying and not convicted of it. He was convicted of transporting liquor that certainly, up to the time of sale, was contraband.

Crim. Code, Sec. 794, says: "It shall be unlawful for any person, etc., to * * * receive, accept * * * any compound or mixture thereof which contains alcohol * * * except as hereinafter provided." This was not within the exception. So we have liquor, contraband in the hands of the seller, contraband in the hands of the principal and not contraband in the hands of the go-between.

I fail to see that this view is technical. The State has the right to prevent the sale of contraband liquor or to hamper the sale by any means allowed by the Constitution. The city of Anderson has the right to promote the public policy of this State as declared by the legislature.

If it be true that the consumption of contraband liquors is fraught with peculiar danger to health and morals, then the State and city has the right to hamper the sale of it. It has the right to forbid the sale, the purchase, the storing or even the possession and transportation. It may forbid them all. It may forbid one and not the other. The fault may be in the writer of this opinion, but I cannot see it and cannot concur.