335 S.C. 58 (1999)
515 S.E.2d 535
ABBEVILLE COUNTY SCHOOL DISTRICT, Allendale County School District, Bamberg County School District 1, Bamberg County School District 2, Barnwell County School District 19, Barnwell County School District 29, Barnwell County School District 45, Berkeley County School District, Chesterfield County School District, Clarendon County School District 1, Clarendon County School District 2, Clarendon County School District 3, Dillon County School District 1, Dillon County School District 2, Dillon County School District 3, Florence County School District 1, Florence County School District 2, Florence County School District 3, Florence County School District 4, Florence County School District 5, Hampton County *59 School District 1, Hampton County School District 2, Jasper County School District, Laurens County School District 55, Laurens County School District 56, Lee County School District, Lexington County School District 4, Marion County School District 1, Marion County School District 2, Marion County School District 3, Marion County School District 4, Marlboro County School District, McCormick County School District, Orangeburg County School District 1, Orangeburg County School District 2, Orangeburg County School District 3, Orangeburg County School District 6, Orangeburg County School District 8, Saluda County School District and Williamsburg County School District, William L. Mills, individually, and as a taxpayer residing in Allendale County and as Guardian ad Litem of Waylon Priester, Waylon Priester, a minor, by and through William L. Mills, as Guardian ad Litem, Betty Bagley, individually, and as a taxpayer residing in Bamberg County and as parent and Guardian ad Litem of Tyler Bagley, Tyler Bagley, a minor, by and through Betty Bagley, as Guardian ad Litem, Evert Comer, Jr., individually, and as a taxpayer residing in Bamberg County and as parent and Guardian ad Litem of Kimberly Comer, Kimberly Comer, a minor, by and through Evert Comer, Jr., as Guardian ad Litem, Marla Q. Jameson, individually, and as a taxpayer residing in Barnwell County and as a parent and Guardian of Eleanor Jameson, Eleanor Jameson, a minor, by and through Marla Q. Jameson, as Guardian ad Litem, Victor M. Lancaster, Sr., individually, and as a taxpayer residing in Barnwell County and as parent and Guardian ad Litem of Christie Lancaster, Christie Lancaster, a minor, by and through Victor M. Lancaster, Sr., as Guardian ad Litem, Dr. Charles Clark, individually, and as a taxpayer residing in Chesterfield County and as parent and Guardian ad Litem of Candace Clark, Candace Clark, a minor, by and through Dr. Charles Clark, as Guardian ad Litem, Colonel Larry Coker, individually, and as a taxpayer residing in Clarendon County and as parent and Guardian ad Litem of Corrie Coker, Corrie Coker, a minor, by and through Colonel Larry Coker, as Guardian ad Litem, John Whiteside, individually, and as a taxpayer residing in Florence County and as parent and Guardian ad Litem of Joel Whiteside, Joel Whiteside, a minor, by and through John Whiteside, as Guardian ad Litem, Dr. Francis Mills, individually, and as a taxpayer residing in Hampton County and as parent and Guardian ad Litem of Amy Mills, Amy Mills, a minor, by and through Dr. Francis Mills, as Guardian ad Litem, Benny Burrison, Jr., individually, and as a *60 taxpayer residing in Hampton County and as parent and Guardian ad Litem of Shamon Burrison, Shamon Burrison, a minor, by and through Benny Burrison, Jr., as Guardian ad Litem, Robert Elisha Short, individually, and as a taxpayer residing in Laurens County and as parent and Guardian ad Litem of Robert B. Short, Robert B. Short, a minor, by and through Robert Elisha Short, as Guardian ad Litem, Dr. Keith A. Bridges, individually, and as a taxpayer residing in Laurens County and as parent and Guardian ad Litem of Jorgana Ranson Bridges, Jorgana Ranson Bridges, a minor, by and through Dr. A. Keith Bridges, as Guardian ad Litem, Hampton L. Logan, individually, and as a taxpayer residing in Lee County and as parent and Guardian ad Litem of Kimberly Logan, Kimberly Logan, a minor, by and through Hampton L. Logan, as Guardian ad Litem, Dr. John Nobles, individually, and as a taxpayer residing in Marlboro County and as parent and Guardian ad Litem of Erin Nobles, Erin Nobles, a minor, by and through Dr. John Nobles, as Guardian ad Litem, Patricia Hampton, individually, and as a taxpayer residing in McCormick County and as parent and Guardian ad Litem of Krystle Hampton, Krystle Hampton, a minor, by and through Patricia Hampton, as Guardian ad Litem, Matlin P. Brown, individually, and as a taxpayer residing in Orangeburg County and as parent and Guardian ad Litem of Tanisha P. Brown, Tanisha P. Brown, a minor, by and through Matlin P. Brown, as Guardian ad Litem, James Berry, individually, and as a taxpayer residing in Orangeburg County and as parent and Guardian ad Litem of Dondrea Berry, Dondrea Berry, a minor, by and through James Berry, as Guardian ad Litem, Gerald Smith, individually, and as a taxpayer residing in Orangeburg County and as parent and Guardian ad Litem of Brenda Smith, Brenda Smith, a minor, by and through Gerald Smith, as Guardian ad Litem, Thomas Shealy, individually, and as a taxpayer residing in Saluda County and as parent and Guardian ad Litem of Thomas Shealy, Jr., Thomas Shealy, Jr., a minor, by and through Thomas Shealy, as Guardian ad Litem, Appellants,
v.
The STATE of South Carolina; David M. Beasley, as Governor of the State of South Carolina; Nikki Setzler, as Chairman of the Senate Education Committee and Chairman of the Education Subcommittee of the Senate Finance Committee, in his representation capacity as a properly designated representative of the South Carolina Senate; David H. Wilkins, as Speaker of *61 the House of Representatives and as representative of the South Carolina House of Representatives; Barbara S. Nielsen, as State Superintendent of Education and as a representative of the State Department of Education; and Celia Gettys, as Chairman of the South Carolina State Board of Education, Respondents.
No. 24939.
Supreme Court of South Carolina.
Heard October 9, 1997.
Decided April 22, 1999.
*63 Curtis L. Ott, of Turner, Padget, Graham & Laney, P.A., and Carl B. Epps, II, of Nelson, Mullins, Riley & Scarborough, LLP, both of Columbia, for appellants.
W. Hogan Brown and Kenneth A. Davis, of Columbia, for respondent Setzler.
Attorney General Charles Molony Condon, Deputy Attorney General J. Emory Smith, Jr., both of Columbia; Ashley B. Abel, of Jackson, Lewis, Schnitzler & Krupman, of Greenville, for respondents State, Beasley, and Gettys.
Stephen L. Elliott, Executive Director of Research, of the House of Representatives, of Columbia, for respondent Wilkins.
George C. Leventis, of Columbia, for Respondent Nielsen.
Barbara E. Brunson and Nancy McCormick, both of Columbia, for the Intervenors South Carolina Protection & Advocacy System for the Handicapped, Inc., Suber and Cook.
FINNEY, Chief Justice:
This is a declaratory judgment action brought by appellants challenging the State's funding of public primary and secondary education. Appellants are forty less wealthy school districts, their public school students, and their taxpayers; respondents (the State) are the State of South Carolina and individuals sued as representatives of governmental bodies. The circuit court granted the State's Rule 12(b)(6), SCRCP, motion and dismissed appellants' complaint for failure to state a cause of action. The complaint alleged violations of the South Carolina Constitution's education clause (art. XI, § 3), the state and federal equal protection clauses, and a violation *64 of the Education Finance Act (EFA), South Carolina Code Ann. §§ 59-20-10 to -80 (1990 & Supp.1998). We reverse the education clause ruling, and affirm as to the remaining issues.
In South Carolina, public education is funded by the federal, state, and local governments. State funding of education is done primarily through mechanisms established by two acts: the EFA and the Education Improvement Act (EIA), S.C.Code Ann. §§ 59-21-420 to -450 (1990 & Supp.1998). The EFA distributes funds using a wealth-sensitive formula, which results in appellants receiving proportionately more state money than wealthier districts. Unlike the EFA, the EIA distributes funds without regard to the school district's tax base. This Court has previously denied constitutional challenges to these statutory distribution methods, including an equal protection challenge, to the EFA's funding scheme. Richland County v. Campbell, 294 S.C. 346, 364 S.E.2d 470 (1988) (Campbell).
Appellants raise a number of challenges to the State's current education funding system. Essentially, they allege that the system is underfunded, resulting in a violation of the state Constitution's education clause, art. XI, § 3; that to the extent funds are distributed without regard to district wealth under the EIA, the system violates the state and federal constitutional guarantees of equal protection; and that the EFA created a private cause of action. Unlike similar suits brought in other states, appellants do not seek "equal" state funding since they already receive more than wealthier districts, but instead allege that the funding results in an inadequate education. On appeal, appellants allege the circuit court erred in granting the State's 12(b)(6) motion, and also allege procedural error.
We address the procedural issue first. While the order purports to decide a Rule 12(b)(6) motion, it is clear that the judge in fact granted respondents summary judgment, making numerous factual determinations, and finding appellants failed to present "clear and convincing" evidence to support their claims. In this appeal, we decide the Rule 12(b)(6) issue: Does appellants' complaint state a cause of action?
We next address appellants' equal protection causes of action. Campbell is dispositive of appellants' claim that the *65 EFA and/or the EIA are violative on their face of either the state or federal equal protection clause. Further, appellants' federal equal protection claim, predicated on inadequate funding, is foreclosed by the United State Supreme Court's decision in San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Finally, appellants' state-based equal protection claim that the EIA has a disparate impact on appellants since its funds are distributed without regard to the individual district's financial needs also fails. A neutral law having a disparate impact violates equal protection only if it is drawn with discriminatory intent. State v. Brown, 317 S.C. 55, 451 S.E.2d 888 (1994). There is no claim of discriminatory intent here. We affirm the circuit court's dismissal of appellants' equal protection claims.
We also affirm the dismissal of appellants' EFA claim because we agree with the circuit court that the EFA does not create a private cause of action. Appellants' EFA claim rests on the language of § 59-20-30, titled "Declaration of legislative purpose":
It is the purpose of the General Assembly in this chapter: To guarantee to each student in the public schools of South Carolina the availability of at least minimum educational programs and services appropriate to his needs, and which are substantially equal to those available to those students with similar needs and reasonably comparable from a program standpoint to those students of all other classifications, notwithstanding geographic differences and varying local economic factors.
Since the EFA does not specifically create a private cause of action, one can be implied only if the legislation was enacted for the special benefit of a private party. Citizens for Lee County v. Lee County, 308 S.C. 23, 416 S.E.2d 641 (1992). In determining whether a statute creates a special duty owed to individuals rather then to the public at large and is therefore enforceable by a private cause of action, this Court has outlined a six part test:
(1) an essential purpose of the statute is to protect against a particular kind of harm;

*66 (2) the statute, either directly or indirectly, imposes on a specific public officer a duty to guard against or not cause harm;
(3) the class of persons the statute intends to protect is identifiable before the fact;
(4) the plaintiff is within the protected class;
(5) the public officer knows or has reason to know the likelihood of harm to member of the class if he fails to do his duty; and
(6) the officer is given sufficient authority to act in the circumstances or he undertakes to act in the exercise of his office.

Jensen v. Anderson County DSS, 304 S.C. 195, 403 S.E.2d 615 (1991).
The purpose of providing a public education is to benefit not just the individual receiving it, but also the public at large. Since the EFA was not created for the special benefit of a private party, no private cause of action is implied. Citizens of Lee County, supra. Further, there is no single "public officer" or group of "public officers" charged with carrying out the `duty' allegedly established by § 59-20-30. Jensen, supra. We affirm the dismissal of this cause of action.
The novel issue in this case involves the education clause of the state constitution. S.C. Const. art. XI, § 3 is entitled "System of free public schools and other public institutions" and provides:
The General Assembly shall provide for the maintenance and support of a system of free public schools open to all children in the state and shall establish, organize and support such other public institutions of learning as may be desirable.
At the heart of this controversy is the question of the duty imposed upon the General Assembly by this constitutional provision. The trial court held this section imposes no qualitative standards, and that absent an allegation that there was no system of free public schools open to all children in the state, no claim was stated under the education clause. The trial court also found the complaint's "bald legal conclusion" that the education furnished is inadequate did not state a clear and *67 convincing constitutional claim, and concluded that judicial restraint, separation of powers, and/or the political question doctrine prevented it from considering this education clause claim. Appellants challenge all these rulings.
It is the duty of this Court to interpret and declare the meaning of the Constitution. State ex rel. Rawlinson v. Ansel, 76 S.C. 395, 57 S.E. 185 (1907). Accordingly, the circuit court erred in using judicial restraint, separation of powers, and the political question doctrine as the bases for declining to decide the meaning of the education clause.
In determining the meaning of the education clause's language, "The General Assembly shall provide for the maintenance and support of a system of free public education....," the Court must be guided not only by the "ordinary and popular meaning of the words used,"[1] but also by S.C. Const. art. I, § 23: "The provisions of the Constitution shall be taken, deemed, and construed to be mandatory and prohibitory, and not merely directory, except where expressly made directory or promissory by its own terms." Since the education clause uses the term "shall", it is mandatory. See also Washington v. Salisbury, 279 S.C. 306, 306 S.E.2d 600 (1983) ("The plain language of [the educational clause] places the responsibility for free public education with the General Assembly....").
The circuit court held the phrase "maintenance and support of a system of free public schools" means simply that there be such a system, and that the clause contains no qualitative component. The court held the clause does not require the schools be adequate or equal. The State does not defend the circuit court's conclusion that our Constitution's education clause does not impose a qualitative standard, but rather argues that the appellants have not properly defined it. According to the State, since the complaint does not contain the correct definition, it does not state a proper claim, and therefore we should affirm the circuit court, without interpreting the clause. We will not accept this invitation to circumvent our duty to interpret and declare the meaning of this clause. State ex rel. Rawlinson v. Ansel, supra.
*68 We hold today that the South Carolina Constitution's education clause requires the General Assembly to provide the opportunity for each child to receive a minimally adequate education. Compare Opinion of the Justices, 624 So.2d 107 (Ala.1993) (holding qualitative standard created by clause "The Legislature shall establish, organize, and maintain a liberal system of public schools throughout the state for the benefit of the children thereof...."); R.E.F.I.T. v. Cuomo, 86 N.Y.2d 279, 631 N.Y.S.2d 551, 655 N.E.2d 647 (1995) ("The legislature shall provide for the maintenance and support of a system of free common schools" requires that each student receive a sound basic education); Fair School Fin. Council of Oklahoma v. State, 746 P.2d 1135 (Ok.1987) (constitutional provisions requiring the "establishment and maintenance of a system of free public schools" means a basic adequate education); Tennessee Small School Sys. v. McWherter, 851 S.W.2d 139 (1993) (holding constitutional clause "The General Assembly shall provide for the maintenance, support and eligibility standards of a system of free public schools" embraces a qualitative component); see also Gould v. Orr, 244 Neb. 163, 506 N.W.2d 349 (1993) (no violation of clause "The legislature shall provide for the free instruction on the common schools of this state" alleged where no claim of "inadequate schooling"). Further, the General Assembly itself has acknowledged the need to "To guarantee to each student in the public schools of South Carolina the availability of at least minimum educational programs and services....".[2]
We define this minimally adequate education required by our Constitution to include providing students adequate and safe facilities in which they have the opportunity to acquire:
1) the ability to read, write, and speak the English language, and knowledge of mathematics and physical science;
2) a fundamental knowledge of economic, social, and political systems, and of history and governmental processes; and
3) academic and vocational skills. *69 See generally, Rose v. Council for Better Educ., 790 S.W.2d 186 (Ky.1989); McDuffy v. Sec. of the Exec. Office of Educ., 415 Mass. 545, 615 N.E.2d 516 (1993); Leandro v. State, 346 N.C. 336, 488 S.E.2d 249 (1997); and Randolph County Bd. of Educ. v. Adams, 196 W.Va. 9, 467 S.E.2d 150 (1995). We recognize that we are not experts in education, and we do not intend to dictate the programs utilized in our public schools. Instead, we have defined, within deliberately broad parameters, the outlines of the constitution's requirement of minimally adequate education.
Finally, we emphasize that the constitutional duty to ensure the provision of a minimally adequate education to each student in South Carolina rests on the legislative branch of government. We do not intend by this opinion to suggest to any party that we will usurp the authority of that branch to determine the way in which educational opportunities are delivered to the children of our State. We do not intend the courts of this State to become super-legislatures or superschool boards.
For the reasons given above, the order under appeal is affirmed in part and reversed in part. We find the complaint does state a claim of inadequate educational opportunity, and therefore remand this matter for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TOAL, WALLER, and BURNETT, JJ., concur.
MOORE, J., dissenting in separate opinion.
MOORE, Justice:
Because the majority's analysis of our Education Clause far exceeds the constraints of judicial construction, I am compelled to dissent.
As the majority notes, at the heart of the Education Clause issue is the question of what duty the constitution imposes on the legislature by mandating it "provide for the maintenance and support of a system of free public schools open to all children." The majority concludes this clause "requires the General Assembly to provide the opportunity for each child to *70 receive a minimally adequate education" and proceeds to define what such a minimally adequate education is.
The goal of ensuring all South Carolina's children an adequate education is unquestionably a laudable one. Under our system of government, however, it is not one entrusted to the judicial branch. Our constitution leaves to the General Assembly, the representatives of the people of this State, the entire responsibility and discretion for determining the quality of public education.
We have previously observed that our constitution "places very few restrictions on the power of the General Assembly in the general field of public education .... the details are left to its discretion." Richland County v. Campbell, 294 S.C. 346, 349, 364 S.E.2d 470 (1988) (quoting Moseley v. Welch, 209 S.C. 19, 39 S.E.2d 133 (1940)). Moreover, in interpreting our constitution, we are bound by certain fundamental principles of constitutional law.
Under our form of government, the legislative power of the General Assembly is subject only to those restrictions contained in the constitutions of this State and the United States. Deese v. Williams, 236 S.C. 292, 113 S.E.2d 823 (1960). Absent constitutional restrictions, the General Assembly's power is otherwise plenary. Knight v. Salisbury, 262 S.C. 565, 206 S.E.2d 875 (1974). Accordingly, our constitution is to be examined, not to ascertain whether a power has been conferred, but to determine whether it has been taken away. Floyd v. Parker Water & Sewer Sub-District, 203 S.C. 276, 17 S.E.2d 223 (1941). Further, a constitutional provision must not be construed to impose limitations on legislative power that are not clearly within the meaning of the provision. State v. Broad River Power Co., 177 S.C. 240, 181 S.E. 41 (1935); Scroggie v. Scarborough, 162 S.C. 218, 160 S.E. 596 (1931).
Our Education Clause requires only that the General Assembly "provide for the support and maintenance of a system of free public schools." It contains no directive regarding the quality or adequacy of the education that must be provided. Since neither this clause nor any other provision restricts the legislature's power to control the quality of public education, we may not impose judicial limits on that power by adding education requirements not found in the constitution. It is for *71 the General Assembly, and not this Court, to determine whether statewide standards of adequacy in education should be set and what, if any, those standards should be.
Although there is no consensus to be found in Education Clause cases, others courts have declined to set adequacy standards in deference to their respective legislatures.[1] I concur completely with the conclusion of the Florida Supreme Court finding no appropriate standard for determining adequacy that does not present a substantial risk of judicial intrusion into the powers and responsibilities assigned to the legislature. Coalition for Adequacy and Fairness in School Funding, Inc. v. Chiles, 680 So.2d 400 (Fla.1996). To read any standard of adequacy into the Education Clause infringes on the legislature's discretion and results in excessive judicial involvement in enforcing judicial standards of adequacy. See City of Pawtucket v. Sundlun, 662 A.2d 40, 59 (R.I.1995) (eschewing the New Jersey Supreme Court's twenty years of judicial oversight under its Education Clause as "a chilling example of the thickets that can entrap a court that takes on the duties of a Legislature.").
Our legislature has in fact taken action to ensure an adequate education to all children by enacting such measures as the Education Finance Act, the Education Improvement Act, and, most recently, the Education Accountability Act. The Education Finance Act specifically purports to "guarantee to each student in the public schools of South Carolina the availability of at least minimum educational programs and services...." While I agree with the majority's holding that appellants have no private cause of action under the Education Finance Act, I find it disconcerting that the majority concludes, on the other hand, that appellants can maintain such an action under the Education Clause which contains no *72 reference to minimum standards. The incongruous result is that legislative education standards are not subject to judicial enforcement but standards emanating from judicial embellishment on our constitution are.
In conclusion, I dissent from that part of the majority opinion regarding the Education Clause and would affirm the trial judge's ruling that the Education Clause imposes no qualitative standards.
NOTES
[1] State v. Broad River Power Co., 177 S.C. 240, 181 S.E. 41 (1935).
[2] S.C.Code Ann. § 59-20-30 (1990).
[1] See Committee for Educational Rights v. Edgar, 174 Ill.2d 1, 220 Ill.Dec. 166, 672 N.E.2d 1178 (1996) (courts may not legislate in the field of public education); City of Pawtucket v. Sundlun, 662 A.2d 40 (R.I.1995) (in light of legislature's plenary powers in educational matters, legislature is endowed with virtually unreviewable discretion); Edgewood Indep. School Dist. v. Meno, 917 S.W.2d 717 (Tex.1995) (legislature's discretion tethered only by limits the people have dictated in the constitution); Scott v. Virginia, 247 Va. 379, 443 S.E.2d 138 (1994) (General Assembly has the ultimate authority for determining and prescribing the standards of quality for public schools).