566 S.E.2d 523

Henry RICHARDSON, Respondent,

v.

TOWN OF MOUNT PLEASANT and Charles M. Condon,
Attorney General of South Carolina, Defendants,

of which the Town of Mount Pleasant is, Respondent,

and

Charles M. Condon, Attorney General
of South Carolina is, Appellant.

No. 25492.

Supreme Court of South Carolina.

Heard Sept. 26, 2001.

Decided July 1, 2002.

Attorney General Charles M. Condon, Deputy Attorney General Treva G. Ashworth, and Assistant Deputy Attorney General J. Emory Smith, Jr., all of Columbia, for appellant.

Coming B. Gibbs, Jr., of Charleston, for respondent.

Henry Richardson; R. Allen Young, of Mount Pleasant, and John B. Williams, of Moncks Corner, for respondent Town of Mt. Pleasant.

Justice PLEICONES.

The circuit court judge found that a municipal police officer is a constable within the meaning of the South Carolina Constitution's dual office holding provisions.[1] Therefore, he held that Respondent Henry Richardson (Respondent) is entitled to continue serving as a police officer for the Town of Mt. Pleasant despite his subsequent election to the Berkeley County Council. Further, the circuit court concluded that to hold otherwise would violate Respondent's federal equal protection rights.[2] The Attorney General appealed. We reverse.

■ The South Carolina Constitution generally prohibits an individual from holding two offices of honor or profit at the same time. There are several exceptions to this general prohibition. Respondent has stipulated that county councilman and police officer are both positions of honor or profit and that, unless one office falls within a dual office holding exemption, he cannot hold both offices simultaneously.

## I. Dual Office Holding

The dual office holding provisions are in derogation of the common law which prohibited a person from holding two offices only if they were "incompatible." *State v. Buttz*, 9 S.C. 156 (1877). Incompatibility meant either that the offices involved "such a multiplicity of business" that one person could not adequately perform both, or that they were "subordinate and interfering with each other, [inducing] a presumption that they cannot be executed with impartiality and honesty." *Id.; Ex parte Ware Furniture*, 49 S.C. 20, 27 S.E. 9 (1897) (McIver, J., dissenting). In some situations, public policy prevented a person from holding more than one office at a time. *Id.*

---

**1.** *See* S.C. Const. art. VI, § 3 and art. XVII, § 1A (Supp.2001); *see also* art. III, § 24 (restrictions on members of the General Assembly) and art. V, § 16 (restrictions on certain judicial officers) (Supp.2001).

**2.** U.S. Const. amend. XIV.

The 1895 Constitution extended the dual office holding proscription to all persons holding positions of "honor or profit," exempting from the prohibition only notaries public and militia officers. Art. II, § 2. An exemption for delegates to constitutional conventions was added, but the provisions remained otherwise unchanged until 1988, when the Constitution was amended to exempt from the prohibition the offices of "constable" and "member of a lawfully and regularly organized fire department." The record does not suggest any persuasive reason why these two offices were added in 1988.

■ In this case, we are asked to determine the meaning of the term "constable" as used in the state constitution's dual office holding provisions. When this Court is called upon to interpret our Constitution, we are guided by the "ordinary and popular meaning of the words used...." *Abbeville County School Dist. v. State*, 335 S.C. 58, 67, 515 S.E.2d 535, 539–40 (1999)(internal citation omitted). A word used in the Constitution should be given its "plain and ordinary" meaning. *Johnson v. Collins Entertainment*, 333 S.C. 96, 508 S.E.2d 575 (1998). In *Johnson*, this Court noted that the term "lottery" as used in our statutes and Constitution had no "technical, legal meaning," and should therefore be construed in the "popular sense."

■ The precise question posed here is whether the office of constable as used in the dual office holding provisions of the constitution encompasses the office of municipal police officer. While the word "lottery" has a popular, but not a technical or legal meaning, in this case we are construing a term of art, that is, the meaning of the term constable as it relates to "an office of honor or profit." We therefore look not just at the popular definition of the word, but also at the legal definition of the office.

'Constable' is defined as "a peace officer with less authority and smaller jurisdiction than a sheriff, empowered to serve writs and warrants and to make arrests; in medieval monarchies, an officer of high rank, usually serving as a military commander in the ruler's absence; the governor of a royal castle," *The American Heritage Dictionary* p. 314 (2d ed.1991); or as "a high officer of a medieval royal or noble household; the warden or governor of a royal household or a

fortified town; a public officer usually of a town or township responsible for keeping the peace and for minor judicial duties." *Webster's New Collegiate Dictionary* p. 243 (1974). The use of the term 'constable' as a synonym for 'police officer' is primarily a British usage. *Id.; The American Heritage Dictionary, supra.*

In legal usage, a constable was originally defined as "an officer who regulated matters of chivalry, tournaments, and feats of arms." Anderson, *A Dictionary of Law* (1891) p. 236. Blackstone defined a constable as "an officer appointed to preserve the peace, and to execute the processes of a justice of the peace." *Id.* Black's Law Dictionary defines constable as:

> [a]n officer of a municipal corporation (usually elected) whose duties are similar to those of the sheriff, though his powers are less and his jurisdiction smaller. He is to preserve the public peace, execute the process of magistrate's courts, and of some other tribunals, serve writs, attend the sessions of the criminal courts, have the custody of juries, and discharge other functions sometimes assigned to him by the local law or by statute. Powers and duties of constables have generally been replaced by sheriffs.

Black's Law Dictionary p. 281 (5th Ed.1979).

Under current South Carolina law,[3] the office which most nearly meets Black's and Blackstone's definitions of constable is that of "magistrate's constable." *See generally* South Carolina Code Annotated, Title 22, Chapter 9. Magistrate's constables have county-wide authority,[4] are authorized to serve[5] and execute process and make returns,[6] and to levy executions and serve attachments.[7] Constables must attend circuit court when required by the sheriff,[8] and while there are deemed

---

3. The office of constable has long existed in South Carolina; there are references to the office in Locke's "The Fundamental Constitutions of Carolina" adopted in 1670.

4. S.C.Code Ann. § 22–9–50 (1976).

5. S.C.Code Ann. § 22–9–90 (1976).

6. S.C.Code Ann. § 22–9–80 (1976).

7. S.C.Code Ann. § 22–9–100 and –110 (1976).

8. S.C.Code Ann. § 22–9–70 (1976).

"officers of the court" bound to "perform the appropriate duties and services assigned them by the sheriff and the presiding judge." [9]

South Carolina statutes create additional constable's offices, which are generally filled by the governor's appointment or commission.[10] Under S.C.Code Ann. § 23–1–60 (1976), the governor "may ... appoint such additional deputies, constables, security guards, and detectives as he may deem necessary to assist in the detection of crime and the enforcement of any criminal laws...." *See also* S.C.Code Ann. § 1–3–220 (Supp.2001) (providing for the governor's appointment of a "chief constable"). State constables appointed by the governor have state-wide jurisdiction. *See Power v. McNair,* 255 S.C. 150, 177 S.E.2d 551 (1970).

Some law enforcement officers are required or authorized to obtain state constable commissions. Generally, the jurisdiction of these law enforcement officers is circumscribed by statute. *See, e.g.,* S.C.Code Ann. § 59–116–20 (1990) (college and university police officers must obtain state constable commissions but their jurisdiction pursuant to such appointment "is limited to the campus grounds and streets and roads through and contiguous to them"); *compare, e.g.,* S.C.Code Ann. §§ 50–3–310 and –340 (Supp.2001) (commissioned Dep't of Natural Resources (DNR) officers "when acting in their official capacity, have statewide authority for the enforcement of all laws relating to wildlife, marine, and natural resources"); *see also* S.C.Code Ann. § 51–3–147 (1976) (commissioned Parks, Recreation and Tourism (PRT) officials have enforcement powers of any state constable).

The governor is also empowered to appoint special state constables whose jurisdiction is "limited to the lands and premises acquired by the United States government ... in Aiken, Allendale, and Barnwell counties." S.C.Code Ann.

---

**9.** *Id.*

**10.** *But see* S.C.Code Ann. § 59–119–340 (1976)(authorizing the board of trustees of Clemson University, acting as the governing body of the municipal corporation of "Clemson University," to "appoint one or more special constables who shall exercise all the power of a State constable or of a municipal policeman to enforce obedience to the ordinances of the board and to the laws of the State").

§ 23–7–40 (Supp.2001). These "Savannah River" constables possess "all of the rights and powers prescribed by law for magistrates' constables and deputy sheriffs and powers usually exercised by marshals and policemen of towns and cities." S.C.Code Ann. § 23–7–50 (Supp.2001); *see also* S.C.Code Ann. § 58–13–910 (Supp.2001) (governor authorized to "certify" special officers or constables for the protection of common carriers).

As explained above, the General Assembly has created and defined several different types of constable's offices. The legislature has also enacted a statute providing for the employment by municipalities of police officers. South Carolina Code Ann. § 5–7–110 (Supp.2001) provides:

Any municipality may appoint or elect as many police officers, regular or special, as may be necessary for the proper law enforcement in such municipality and fix their salaries and prescribe their duties.

**Police officers shall be vested with all the powers and duties conferred by law upon constables, in addition to the special duties imposed upon them by the municipality. . . .**

(emphasis supplied).

Thus, unlike campus police officers, DNR officers, and PRT officials, municipal police officers need not obtain commissions from the governor to exercise the power and duties of a state constable.[11] Similarly, the General Assembly, in order to benefit municipal courts, has delegated to municipal police officers many of the responsibilities, and "the same powers and duties as are provided for magistrates' constables." S.C.Code Ann. § 14–25–55 (Supp.2001). No such express delegation of the powers of state constables and magistrate's constables to municipal police officers would be necessary, however, if those officers were already possessed of this authority by virtue of their employment. The General Assembly has distinguished between the office of constable and that of municipal police officer.

---

11. Despite this delegation of state constable authority, municipal police officers generally have no jurisdiction beyond the municipality's territorial limits. *See State v. Harris,* 299 S.C. 157, 382 S.E.2d 925 (1989).

In addition to the statutory provisions separately providing for the creation of the offices of 'constable' and 'municipal police officer,' this Court has long recognized that the offices are distinct. In 1881, the Court held:

Municipal corporations as now established by law are of comparatively modern origin. They are agencies to assist in the conduct of local civil government, and what the state constitutionally empowers them to do may be considered as done by the state.... Mr. Dillon, in his excellent work on Municipal Corporations, observes that '**the office of a police officer is not known to the common law; it is created by statute, and the officer has and can exercise only such powers as he is authorized to do by the legislature.... When police officers are by statute invested with all the powers of constables, or conservators of the peace [they possess the same arrest powers]'....**

*State v. Bowen,* 17 S.C. 58, 61 (emphasis supplied); *see also City Council v. Payne,* 11 S.C.L. (2 Nott & McC.) 475 (1820) (Charleston ordinance gave its city guard the arrest powers of constables). We find nothing in our past or current law which has equated the offices, nor do we find that the offices share a "popular" meaning.

At the time the General Assembly enacted the legislation providing for the referendum to add the constable exception to the dual office holding provisions, the office of 'constable' had fixed meanings under South Carolina law. A constable is a person who holds a state commission, is employed in such capacity by a magistrate, or otherwise meets one of the statutory definitions. A municipal police officer is a person employed by a municipality pursuant to § 5–7–110. The office of 'constable' does not subsume the office of 'municipal police officer.'

Respondent, in his capacity as a municipal police officer, is not a constable exempt from the constitutional provisions forbidding dual office holding.

We reverse the circuit court's holding permitting Respondent to hold both offices.

## II. Equal Protection

■ The circuit court held there was no rational basis for exempting constables, but not municipal police officers, from the dual office holding proscription because the duties of each are substantially identical and the statutes do not distinguish between the positions. The court therefore concluded that to prohibit Respondent from holding both his office in Mt. Pleasant and his office in Berkeley County would violate his federal equal protection rights. We disagree.

As explained above, the factual predicate upon which the circuit court's decision rests is incorrect: the duties and jurisdiction of constables vary widely from those of municipal police officers, and the statutes distinguish between the offices. Further, the circuit court fundamentally misidentified the 'class' affected by the dual office holding proscriptions. That class consists of all persons holding an "office of honor or profit." All members of the class, including Respondent, are subject to the same limitation, that is, they may hold only one such office at any time, subject to the same exemptions. There is no "irrational classification" and the dual office holding provisions of the state constitution do not run afoul of the federal equal protection clause.[12]

### Conclusion

Respondent has stipulated that county councilman and municipal police officer are positions of honor or profit. Since neither office is exempt from the state constitution's dual office holding prohibitions, the circuit court order permitting Respondent to retain both offices is

REVERSED.

MOORE, WALLER and BURNETT, JJ., concur.

TOAL, C.J., dissenting in a separate opinion.

---

12. We point out that were there, in fact, an equal protection violation in the constable exception, the remedy would not be to expand the exempted class to include Respondent as was suggested by the circuit court, but rather to strike the exemption in its entirety.

Chief Justice TOAL.

I respectfully dissent. In my opinion, the exemption to the prohibition against dual office holding for constables and firefighters encompasses municipal police officers. As the majority points out, the legislature enacted a statute providing for the employment of police officers by municipalities. South Carolina Code Ann. § 5–7–110 (Supp.2001) provides, in part, "police officers *shall be vested with all the powers and duties conferred upon constables,* in addition to the special duties imposed upon them by the municipality...." (Emphasis added). In my view, by vesting municipal police officers with all of the powers and duties of constables, the legislature exempted municipal police officers from the prohibition against dual office holding.