705 S.E.2d 53

**CITY OF ROCK HILL, Respondent,**

v.

**Tyler M. HARRIS, Appellant.**

No. 26917.

Supreme Court of South Carolina.

Heard Sept. 21, 2010.

Decided Jan. 24, 2011.

Bobby G. Frederick and Laura L. Hiller, both of Myrtle Beach, for Appellant.

Solicitor Paula Knox Brown, of Rock Hill, for Respondent.

Chief Justice TOAL.

In this case, Tyler M. Harris (Appellant) claims that section 20–7–8920 of the South Carolina Code, now section 63–19–2440 (hereinafter section 63–19–2440), is unconstitutional because it conflicts with Article XVII, section 14 of the South Carolina Constitution. Section 63–19–2440 makes it illegal for persons under the age of twenty-one to "consume, or knowingly possess beer, ale, porter, wine, or other similar malt or fermented beverage." Article XVII, section 14 of the our Constitution deems citizens over eighteen to have full legal rights and responsibilities, with the sole exception that the General Assembly may restrict the sale of alcoholic beverages to persons until the age of twenty-one. We construe the term "sale" broadly and therefore affirm Appellant's conviction.

## FACTUAL/PROCEDURAL BACKGROUND

On October 10, 2007, Appellant was a rear passenger in a vehicle stopped for a traffic violation in the city of Rock Hill, South Carolina. After admitting to the officer that he had consumed two beers, Appellant, who was then twenty years old, was cited for possession of beer under twenty-one, pursuant to section 20–7–8920, and for public disorderly conduct.

The municipal court convicted Appellant of the possession charge. Appellant thereafter appealed his conviction to the circuit court, arguing three grounds: (1) the city of Rock Hill failed to prove jurisdiction over the matter, (2) beer is not an alcoholic beverage as defined by the statute, and (3) the statute under which Appellant was convicted is unconstitutional. The circuit court affirmed the conviction. Appellant then filed a timely appeal to the court of appeals. This case is before this Court under Rule 204(b), SCACR. Appellant preserves only the constitutional issue in this appeal.

## STANDARD OF REVIEW

An issue regarding statutory interpretation is a question of law. *Jeter v. S.C. Dept. of Transp.*, 369 S.C. 433, 438, 633 S.E.2d 143, 146 (2006). In a case raising a novel question of law, the appellate court is free to decide the question with no particular deference to the lower court. *Ex parte Capital U–Drive–It, Inc.*, 369 S.C. 1, 6, 630 S.E.2d 464,

467 (2006); *Hagood v. Sommerville,* 362 S.C. 191, 194, 607 S.E.2d 707, 708 (2005).

## LAW/ANALYSIS

### I. Construction of Article XVII, section 14 of the South Carolina Constitution

 Appellant argues that section 63–19–2440 of the South Carolina Code conflicts with Article XVII, section 14 of the South Carolina Constitution because the statute restricts more than the sale of alcoholic beverages to eighteen to twenty year olds by also restricting their possession and consumption. We disagree.

### A. Applicable Law

An amendment to the South Carolina Constitution originates by proposal before the General Assembly and, if passed by two-thirds vote in each House, is then submitted to the people of South Carolina in the next general election. S.C. Const. art. XVI, § 1. If the electorate votes in favor of the amendment, the General Assembly makes the final decision as to its ratification by securing a simple majority vote in each House. *Id.*

 When this Court is called to interpret our Constitution, it is guided by the principle that both the citizenry and the General Assembly have worked to create the governing law. *See Miller v. Farr,* 243 S.C. 342, 133 S.E.2d 838, 841 (1963) (stating that the Court's efforts in construing the South Carolina Constitution are aimed at assessing the intent of its framers and the people who adopted it). Therefore, the Court will look at the "ordinary and popular meaning of the words used," *Richardson v. Town of Mount Pleasant,* 350 S.C. 291, 294, 566 S.E.2d 523, 525 (2002), keeping in mind that amendments to our Constitution become effective largely through the legislative process. *Miller v. Farr,* 243 S.C. 342, 347, 133 S.E.2d 838, 841 (1963). For this reason, "the Court applies rules similar to those relating to the construction of statutes" to arrive at the ultimate goal of deriving the intent of those who adopted it. *Id.*

 In determining whether a statute complies with the South Carolina Constitution, the Court will, if possible,

construe[ ] [the statute] so as to render it valid; every presumption will be made in favor of the constitutionality of a legislative enactment; and a statute will be declared unconstitutional only when its invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution.

*Moseley v. Welch,* 209 S.C. 19, 26–27, 39 S.E.2d 133, 137 (1946).

 The power of our state legislature is plenary, and therefore, the authority given to the General Assembly by our Constitution is a limitation of legislative power, not a grant. *Id.* at 26, 39 S.E.2d at 137. This means that "the General Assembly may enact any law not expressly, or by clear implication, prohibited by the State or Federal Constitutions...." *Id.* At the same time, when determining the effect of statutory language, "the canon of construction '*expressio unius est exclusio alterius*' or '*inclusio unius exclusio alterius*' holds that 'to express or include one thing implies the exclusion of another, or the alternative.'" *State v. Bolin,* 378 S.C. 96, 100, 662 S.E.2d 38, 40 (2008) (quoting *Hodges v. Rainey,* 341 S.C. 79, 533 S.E.2d 578 (2000)).

 Absent ambiguity, the court will look to the plain meaning of the words used to determine their effect. *Hodges,* 341 S.C. at 85, 533 S.E.2d at 581. However, the plain meaning rule is subject to this caveat:

However plain the ordinary meaning of the words used in a statute may be, the courts will reject that meaning when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the Legislature or would defeat the plain legislative intention. If possible, the court will construe the statute so as to escape the absurdity and carry the intention into effect.

*Id.* (quoting *Kiriakides v. United Artists Commc'ns, Inc.,* 312 S.C. 271, 275, 440 S.E.2d 364, 366 (1994)).

### 1. State v. Bolin

Appellant relies partly upon this Court's finding in *State v. Bolin,* 378 S.C. 96, 662 S.E.2d 38 (2008), to support its

argument that section 63-19-2440 is unconstitutional. In *Bolin*, this Court held that the General Assembly exceeded its authority under Article XVII, section 14 by restricting hand gun possession among persons aged eighteen to twenty. 378 S.C. at 100, 662 S.E.2d at 40. The Court looked at the plain language of the amendment to find that the constitution's preservation of authority for the General Assembly to regulate this age group with respect to alcoholic beverages necessarily implied the exclusion of any authority the General Assembly may have had to restrict other rights of this age group. *Id.*

The same canons of statutory construction used in *Bolin* lead to a different conclusion here. Therefore, in reaching the conclusion that sale has a broad meaning, *Bolin* remains intact.

## B. Construing "Sale"

Sale is defined as "the exchange of goods or services for money." *American Heritage Dictionary* (4th ed.2001). It is our opinion, however, that the exchange of a good necessarily implies it will be possessed by the buyer. Further, if the Court were to narrowly read sale as authorizing the General Assembly to restrict only the exchange of alcoholic beverages for money, an absurd result could follow that might defeat the will of the people of South Carolina and the General Assembly. In this instance, the exchange of money would be the only technicality sitting between an eighteen year old and her access to alcohol. For example, bars could supply alcoholic beverages for free in efforts to attract older, paying patrons; retailers could give free beer in exchange for the purchase of other store merchandise; and persons over the age of twenty could openly purchase alcohol for this age group with impunity. The possibility of an absurd result compels us to look beyond the face of the amendment to ascertain the intent of its adopters.

### 1. *Legislative History*

During the 1973 legislative session, the General Assembly considered and passed Joint Resolution H.1018 (Resolution) to submit a constitutional amendment to voters regarding the legal rights of eighteen year olds. H.R.J. Res. 1018, 100th Gen. Assemb., 1st Reg. Sess. (S.C.1973). At the time the

legislature considered this Resolution, it was unlawful in South Carolina for persons under the age of twenty-one to purchase or possess any alcoholic liquors. S.C.Code Ann. § 1–4–96.1 (1962). Retailers were similarly prohibited from selling, bartering, exchanging, giving, transferring, or delivering alcoholic liquors to minors. S.C.Code Ann. § 1–4–78(3)(c). The same rules applied to the purchase, possession, and sale of beer and wine, except that the prohibitions affected persons under age eighteen. *See* S.C.Code Ann. §§ 1–4–203 & 1–4–203.4 (1962).

The original reading of the Resolution gave unrestricted rights to eighteen year olds, providing that "persons eighteen years of age or older shall be endowed with full legal capacity." H.R.J. Res. 1018, 100th Gen. Assemb., 1st Reg. Sess. (S.C. Feb. 8, 1973). Incorporating this amendment into the constitution would have created a number of new rights for eighteen year olds,[1] including the right to purchase, possess, and consume alcoholic liquors. The House passed this Resolution, and after three readings on the Senate floor, the Senate designated it to be carried over. *Id.* at Apr. 3, 1973. However, the motion to carry the Resolution forward was suddenly withdrawn and members of the Senate Judiciary Committee proposed to amend the Resolution by inserting, *"provided,* that the General Assembly may restrict the sale of alcoholic beverages to persons until age twenty-one." *Id.* at Apr. 5, 1973 (emphasis in original). An original draft of this proposed change reveals that the Judiciary Committee first used the term "purchase," which was later stricken to substitute the word "sale." Memorandum to Senate Clerk to be entered in the Senate Journal (Apr. 4, 1973) (on file at the South Carolina

---

1. The statutory age of majority in 1973 was twenty-one, unless otherwise noted in the Code. *See* S.C.Code Ann. §§ 12–62–403(a)(11) (defining "minor" in the Uniform Gifts to Minors Act as "a person who has not attained the age of twenty-one years"), 5–19–417 (a person may not be an executor of an estate until attaining the age of twenty-one), 5–20–24.1 (providing that an applicant for a marriage license who is under the age of twenty-one and cannot show proof of age by birth certificate must obtain consent from a parent or guardian), 2–10–128(1) (a person below the age of twenty-one is considered disabled for purposes of the adverse possession statute), 2–11–153 (while educational institutions can enforce contracts and promissory notes against persons over age sixteen, certain other contracts cannot be ratified until the undergraduate has reached the age of majority, twenty-one) (1962).

State Archives). The description given to the Resolution for purposes of floor discussion was broader. *Id.* It read:

A Joint Resolution proposing an amendment to Article XVII of the Constitution of South Carolina, 1895, which contains various miscellaneous provisions, so as to provide that person eighteen years of age or older shall be endowed with full legal capacity *except in relation to* alcoholic beverages.

*Id.* (emphasis added).

The House voted favorably upon this change, and the General Assembly ratified the Resolution on April 12, 1973. *Id.* The following language was submitted to voters in the general election of 1974:

Every citizen who is eighteen years of age or older, not laboring under disabilities prescribed in this Constitution or otherwise established by law, shall be deemed sui juris and endowed with full legal rights and responsibilities, *provided,* that the General Assembly may restrict the sale of alcoholic beverages to persons until age twenty-one.

*Id.* (emphasis in original). Upon passage by the voters, the General Assembly ultimately ratified the amendment on February 6, 1975. H.R.J. Res. 1018, 102d Gen. Assemb., 1st Reg. Sess. (S.C.1975).

The Journals of the House and Senate do not reflect the legislature's purpose for suddenly inserting a provision into the Resolution that reserved its power to regulate access to alcoholic beverages among this age group. It stands to reason, however, that a policy interest was at hand. The legislature's duty to promote the safety and welfare of the community could be curtailed by relinquishing its power to regulate the availability of alcoholic beverages to young people. The same cannot be said of other rights created by this amendment, such as the right to marry, enter into contracts, or administer estates. Because we believe the legislature reserved this power for health and safety reasons, we do not believe it would have retained this power if it had a hollow reach.[2] The

---

2. We note that the South Carolina Code creates two schemes of alcoholic beverage regulation. Title 4 of the 1962 Code, Alcohol and Alcoholic Beverages, is divided into Chapter 1, which regulates alcoholic liquors, and Chapter 2, which regulates beer, porter, and wine. S.C.Code Ann. §§ 1–4–1 & 1–4–201 (1962). Thus, "alcoholic bever-

broad description given to the Resolution on the House and Senate floor supports this notion. Further, subscribing to Appellant's narrow construction of sale insinuates that by inserting this language, the legislature only wished to retain its power over alcohol commerce among this age group. We do not believe this to be true.

With respect for the principle that every presumption will be made in favor of the constitutionality of a statute, we construe the term **sale,** as used in the South Carolina Constitution, broadly. Therefore, when the General Assembly reserved its power to restrict the **sale** of alcoholic beverages, it meant to also reserve its power to restrict the **purchase** and **possession** of alcoholic beverages, thereby maintaining the statutory framework as it stood at the time.

## CONCLUSION

For the foregoing reasons, we believe that Article XVII, section 14 of the South Carolina Constitution affords the General Assembly the power to restrict the sale, purchase, and possession of alcoholic beverages among persons under the age of twenty-one. Therefore, we hold that section 63–19–2440 of the South Carolina Code is constitutional.

**Affirmed.**

BEATTY, KITTREDGE and HEARN, JJ., concur.

PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES.

I respectfully dissent. In my view, we cannot construe the term 'sale' to embrace the terms purchase and/or possession. *See City of Anderson v. Fant,* 96 S.C. 5, 79 S.E. 641 (1913). I therefore reluctantly conclude that under S.C. Const. art. XVII, § 14, the legislature may only restrict the sale of

---

ages" was an umbrella term in the Code. Accordingly, we believe that when the General Assembly used the term "alcoholic beverages" in the State Constitution, it intended to reserve a broad right to regulate alcohol usage among persons below the age of twenty-one; a right that included the regulation of both alcoholic liquors and beer, wine, and porter.

alcoholic beverages to adults between the ages of eighteen and twenty-one.